Judge Dale N. Atkins
Plaintiff, Diana Deruise Pierce ("Plaintiff"), appeals two summary judgments dismissing her medical malpractice action against defendants, University Medical Center New Orleans, University Medical Center Management Corporation, Dr. Davis Wendell Ogitani, Brian Conkerton, R.N., and Danielle Johnson, R.N. (collectively, *152 "Defendants"), with prejudice.[1] For the following reasons, we reverse and remand.
FACTUAL AND PROCEDURAL BACKGROUND
This is a medical malpractice case that arises as a result of treatment rendered to the decedent, Roy Pierce ("Mr. Pierce"), at University Medical Center in New Orleans in late December of 2012 and early January 2013.
Mr. Pierce originally presented to LSU Interim Public Hospital on December 27, 2012, for an outpatient EGD.[2] On admission, he was awake, alert, and able to communicate and give consent for medical treatment. He complained of abdominal pain, fatigue, dark urine, and shortness of breath. The initial workup of Mr. Pierce showed that he was anemic, in renal failure, hyponatremiac,[3] and had elevated BUN/creatinine levels. A CT of his abdomen and pelvis showed a large mass in his bladder with a fistula (tunnel) to his colon. Rather than immediately performing the EGD, Mr. Pierce was admitted for a comprehensive workup and placed under the care of Defendant Dr. Ogitani. As part of this comprehensive medical workup, he was referred to Interventional Radiology for placement of a Perm-A-Cath (central line) for hemodialysis, which was scheduled for the morning of January 3, 2013.
The deposition testimony of Dr. Benjamin Cooper ("Dr. Cooper"), an Interventional Radiology Fellow, reflects that on the evening before the procedure was scheduled, Dr. Cooper was advised that Mr. Pierce was medically stable and able to consent to the treatment. However, overnight, from January 2, 2013 through January 3, 2013, Mr. Pierce's vital and mental status severely deteriorated. Medical records indicate that Mr. Pierce's blood pressure dropped by over 20 points from 4:46 p.m. on January 2, when it was 93/64, pulse 112, to 5:57 a.m. on January 3, when it was 71/46, pulse 83. He was also unable to walk without assistance, and at one point he fell while being assisted from the bathroom to the bed. He was assisted to the floor by the nurse, and then back to bed with the aid of three nurses and one transport employee. The nurse's notes reflect that the physician was on the unit and present while Mr. Pierce was assisted back to bed.
Despite this acute change in status, the Defendants did not change the treatment plan or render different treatment, such as a transfer to the Critical Care unit, but instead adhered to the original plan to go forward with the central line. Thus, on the morning of January 3, 2013, Mr. Pierce was sent on a gurney to the Radiology Department with a hospital escort (described as "Transport," essentially a porter), who was neither a registered nurse nor a doctor.
What happened next is unclear from the record. Plaintiff alleges that Mr. Pierce was parked and left alone and unattended in the hallway-acutely hypotensive and in an altered mental state, until he was found by Dr. Cooper, alone and unattended, at approximately 8:00 a.m. on January 3, 2013. Defendants argue that there is no evidence that Mr. Pierce was left unattended, *153 and in support of this, reference portions of Dr. Cooper's deposition testimony that were not included in the record on appeal.[4] Thus, whether or not Mr. Pierce was left unattended in his severely deteriorated state is simply not clear from the record.
The deposition testimony does establish that upon finding Mr. Pierce, Dr. Cooper called for Defendant Davis Ogitani, M.D., the primary care doctor assigned to Mr. Pierce, and had an emergency consent executed to place the central line so that Mr. Pierce could receive treatment for his deteriorating condition. Mr. Pierce went into cardio-pulmonary arrest as they were transferring him to the radiology table, and heroic efforts to resuscitate him were futile. Mr. Pierce died on the table in the radiology suite.
In his deposition, Dr. Cooper also testified that it was unusual for someone incapable of consenting to be sent to radiology, that the change in the patient's condition overnight had not been conveyed to him, and as a result the patient was "not in the place where that patient should [have been] in that moment." Dr. Cooper also testified that he agreed with the statement that Mr. Pierce should not have been transported to the radiological suite in the condition he was in, because he was unstable, and further testified that Mr. Pierce's blood pressure reflected a dangerously hypotensive state. He also stated that he could not say one way or the other whether Mr. Pierce would have had a better chance of surviving if he had been in the ICU rather than the radiology suite. As well, he acknowledged that the medical record doesn't indicate that Mr. Pierce was transported or attended by anyone other than a standard escort (transport employee).
Subsequent to Mr. Pierce's death, a request for review of the Plaintiff's malpractice claims was filed before a medical review panel.[5] An opinion was rendered by the medical review panel on April 20, 2016, concluding that none of the Defendants deviated below the standard of care, and that the decedent was properly monitored, and all physician orders were timely and appropriately followed.
On August 16, 2016, Plaintiff (Mr. Pierce's widow) filed a petition for damages. On October 18, 2016, Defendants, University Medical Center New Orleans and University Medical Center Management, filed for summary judgment. Shortly thereafter, Defendants Ogitani, Conkerton, and Johnson also filed a motion for summary judgment. The motions were originally set for hearing on December 2, 2016, but were continued at Plaintiff's request to March 3, 2017, and then to May 19, 2017. They were then continued without date to allow Plaintiff to conduct further discovery. On October 23, 2017, the summary judgments were re-set for December 1, 2017. Prior to that hearing, on November 29, 2017, Plaintiff filed a motion to continue the summary judgment hearing, as well as a statement of material facts in dispute, asserting a single material fact in dispute, as follows: "Whether the defendants ... breached the standard of care when they transported and abandoned Roy Pierce in the hallway outside of the Radiology suite when he was in an acutely decompensated, mentally altered hypotensive state."[6] On *154 November 30, 2017, one day before the hearing, Plaintiff filed an opposition to the motions. It is undisputed that no Independent Medical Expert testimony was provided in support of Plaintiff's opposition.
The Court, ruling from the bench, denied the motion to continue, and granted both summary judgment motions, signing the judgment as to the hospital defendants on December 1, 2017, and as to the remaining practitioner defendants on December 19, 2017. The December 19, 2017 judgment also denied the motion to continue. This timely appeal followed.
ASSIGNMENTS OF ERROR
Plaintiff has asserted the following assignments of error on appeal. First, that the district court erred in ruling that an independent medical expert is necessary to establish the standard of care in a medical malpractice case when the breach is objective and apparent and negligence can be reasonably inferred. Second, that the district court erred in ruling that Dr. Cooper was not a medical expert who established the standard of care and its breach, and in ruling that no genuine issue of material fact existed regarding whether or not the Defendants breached their standard of care.[7] Third, Plaintiff asserts that the district court erred in not granting the Plaintiff a continuance of the hearing on the Motion for Summary Judgment, as discovery had not been completed.
DISCUSSION
We review the grant or denial of a motion for summary judgment de novo. Independent Fire Ins. Co. v. Sunbeam Corp. , 1999-2181, 1999-2257, p. 7 (La. 2/29/00), 755 So.2d 226, 230. A motion for summary judgment should be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).
The moving party bears the burden of proof. However, if the movant will not bear the burden of proof at the trial of the matter, the movant is not required to negate all essential elements of the adverse party's claim, but rather to point out an absence of factual support for one or more essential elements. Subsequently, if the non-moving party fails to provide factual evidence to establish that s/he will be able to satisfy the evidentiary burden of proof at trial, no genuine issue of material fact exists, and summary judgment is proper. La. C.C.P. art. 966 (D)(1).
"In a ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether a genuine issue of triable fact remains." Deroche v. Tanenbaum , 2013-0979, p. 11 (La. App. 4 Cir. 12/18/13), 131 So.3d 400, 408 (citing Hines v. Garrett , 2004-0806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 ). "Factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." Id. (citing Willis v. Medders , 2000-2507, p. 2 (La. 12/8/00), 775 So.2d 1049, 1050 ). Whether a particular fact in dispute is "material" for summary judgment purposes is determined in light of the substantive law applicable to the case. Id. (citing Richard v. Hall , 2003-1488, p. 5 (La. 4/23/04), 874 So.2d 131, 137 ).
To prevail in a medical malpractice case, a plaintiff must prove all three of the following elements by a preponderance of the evidence: (1) the applicable standard of *155 care expected of physicians in his medical specialty, (2) a violation of that standard of care, and (3) a causal connection between the alleged negligent treatment and the plaintiff's injuries. La. R.S. 9:2794 ; Pfiffner v. Correa , 94-0924, 94-0963, 94-0992, p. 8 (La. 10/17/94), 643 So.2d 1228, 1233.
While expert testimony is generally required to establish malpractice, "[t]he jurisprudence has also recognized that there are situations in which expert testimony is not necessary." Pfiffner, 94-0924 at p. 9, 643 So.2d at 1233. For instance, expert testimony is not required where the physician does an obviously careless act, from which a lay person can infer negligence. Id. (citing Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713, 719 (La. 1986) ). "Failure to attend a patient when the circumstances demonstrate the serious consequences of this failure, ... [is] also [an] example[ ] of obvious negligence which require[s] no expert testimony to demonstrate the physician's fault." Id. , 94-0924 at p. 9, 643 So.2d at 1234. "Likewise, where the defendant/physician testifies as to the standard of care and his breach thereof, see, e.g., Riser v. American Medical Int'l Inc., 620 So.2d 372, 377 (La. Ct. App. 5th Cir.1993), ... expert testimony is also unnecessary to establish a malpractice claim." Pfiffner, 94-0924 at p. 9, 643 So.2d at 1234.
Finally, a medical review panel opinion is "admissible, expert medical evidence that may be used to support or oppose any subsequent medical malpractice suit." Samaha v. Rau , 2007-1726, p. 15 (La. 2/26/08), 977 So.2d 880, 890 (citing La. R.S. 40:1299.47(G) and (H) ).[8] As with any other expert testimony or evidence, the medical review panel opinion is subject to review and contestation by an opposing viewpoint.
Because in this case Defendants will not bear the burden of proof at trial on the elements of the malpractice claim, they are required only to point to a lack of factual support for one or more elements to prevail on their summary judgment motion. Defendants have attempted to do so by pointing to the lack of medical expert testimony that Defendants violated the standard of care. Further, they point to the Medical Review Panel ("MRP") Opinion, which concluded that "nothing in the record ... indicate[d] that the hospital and/or its employees deviated from the standard of care," and that "[t]he patient was properly monitored," as un-rebutted prima facie proof of this contention.
Notwithstanding the conclusions of the MRP Opinion, in the instant case, we find that on the record before us, a genuine issue of material fact remains that prevents us from resolving the question of whether expert medical testimony was required to prove that a breach of the standard of care occurred. The evidence submitted simply does not conclusively establish whether Mr. Pierce, after severely decompensating overnight, was left unattended for a period of time in the hallway outside the radiology suite, and if so for how long, and all doubt must be resolved in Plaintiff's favor. Moreover, if that did in fact occur, and depending upon how long Mr. Pierce was left, such a failure may well be one of such obvious *156 negligence that no expert testimony would be necessary to demonstrate a breach of the standard of care.
In addition, we note that that the portion of the deposition testimony of Dr. Cooper that is in the record supports an inference that the standard of care was not met. For instance, Dr. Cooper testified that it was unusual for someone incapable of consenting to be sent to radiology, that the change in the patient overnight had not been relayed to him, and as a result the patient was "not in the place where that patient should [have been] in that moment." Dr. Cooper also testified that he agreed with the statement that Mr. Pierce should not have been transported to the radiological suite in the condition he was in, because he was "unstable," and in fact, he testified that Mr. Pierce's blood pressure reflected a dangerously hypotensive state. While Defendants' opposition references purported testimony to the contrary from Dr. Cooper, it is not included in the record provided to us (and thus presumably was not considered by the district judge).
Accordingly, with respect to Plaintiff's first two assignments of error, we agree that the district court erred in ruling that an independent medical expert was necessary to establish the standard of care in this case, and that it was breached, because a fact issue remains about what actually occurred with Mr. Pierce and whether it was so egregious that expert testimony was unnecessary. Therefore, on the record before us, we conclude that summary judgment on those issues was not appropriate. Having so found, we pretermit consideration of the question whether Dr. Cooper was qualified as an expert and whether the trial court erred in denying a continuance.
We recognize, however, that in addition to proving a breach, Plaintiff must also prove that the breach was the cause of her husband's death. We acknowledge that this will be very difficult to prove without expert testimony, unless the evidence ultimately shows that Mr. Pierce's abandonment was for such a period and under such circumstances that a lay jury could infer causation as well as an expert could. See Pfiffner , 94-0924 at p. 9, 643 So.2d at 1234. However, this is not a determination we can make on the record before us. In addition to the dearth of facts in the record regarding what actually happened to Mr. Pierce after he was transported to the hallway outside of the radiology suite, the MRP Opinion did not address causation, nor did the district court (either at the hearing or in its signed judgment). Dr. Cooper's testimony on this point was scant and equivocal. On this record, and resolving all doubt in favor of the Plaintiff (as we must), we simply cannot conclude that summary judgment is appropriate at this juncture. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
BELSOME, J., CONCURS IN THE RESULT
LOBRANO, J., CONCURS IN THE RESULT.
JENKINS, J., DISSENTS WITH REASONS
BELSOME, J., CONCURS IN THE RESULT
I agree with the majority's decision to reverse and remand to the trial court. However, I would remand the case to allow the Plaintiff an opportunity to conduct additional discovery, pursuant to *157 La. C.C.P. art. 966(A)(3).[1]
Admittedly, a party does not have a right to delay a decision on a motion for summary judgment until discovery is complete. However, "the law does require that the parties be given a fair opportunity to present their case." Leake & Andersson, LLP v. SIA Ins. Co. (Risk Retention Grp.) , Ltd. , 03-1600, pp. 3-4 (La. App. 4 Cir. 3/3/04), 868 So.2d 967, 969 (citation omitted).[2]
In the instant case, the record reveals that the Plaintiff did not have an adequate opportunity to present her case. First, no discovery cutoff, expert designation, or trial deadlines were established. Next, the Plaintiff took steps to conduct additional discovery and has indicated what additional discovery is needed. Finally, the discovery issue was raised with the trial court in the Plaintiff's motion to continue.
Notably, the Defendants filed two separate motions for summary judgment, each within ten days of answering the lawsuit.[3] The motions for summary judgment were continued several times. Significantly, during the last continuance, the parties agreed to continue the summary judgment hearing without date to allow for additional discovery. However, the Defendants re-set their motions without notification to the Plaintiff.
The Civil District Court Local Rules require litigants to certify that discovery is complete before obtaining a trial date. However, when discovery is not complete, the trial court may set a pre-trial scheduling order to allow a sufficient amount of discovery to be completed before trial. See Civil District Court Local Rule 9.14.[4] It is *158 evident that the rule intends to afford litigants a fair opportunity for discovery and to present a case, in conformity with La. C.C.P. art. 966(A)(3). However, the discretionary nature of the rule leads to inconsistent application among the courts below. Certainly, a uniform rule would safeguard the discovery protections afforded under the law. Recognizing the absence of uniformity in setting discovery deadlines below and the parties' agreement to continue the hearing without date until discovery was complete, I find that additional time for discovery is warranted.
Under these circumstances, summary judgment was premature. Consequently, the Plaintiff should be afforded a fair opportunity to present her case. See Crawford v. City of New Orleans , 01-0802, pp. 7-8 (La. App. 4 Cir. 1/23/02), 807 So.2d 1054, 1058 (where this Court reversed the granting summary judgment based on inadequate discovery where there was no trial set; the plaintiff identified the deposition testimony sought and the defendant agreed to participate; the plaintiff documented efforts to set the deposition; and the plaintiff filed a motion to continue due to the need for the requested discovery); Ainsworth v. American Home Assurance Company , 239 So.3d 359 (La. App. 4 Cir. 2/21/18), 243 So.3d 1061 (La. 6/1/18) (where this Court found summary judgment premature and remanded for additional discovery since there was no discovery or expert designation deadline, the discovery issue was raised, and the case was complex). Accordingly, I would reverse the trial court's ruling granting summary judgment and remand to allow the trial court to set a pre-trial scheduling order that would allow Plaintiff an adequate opportunity for additional discovery.
JENKINS, J., DISSENTS WITH REASONS
I respectfully dissent from the majority's conclusion that summary judgment is not warranted because there are genuine issues of material fact as to whether Plaintiff must present expert medical testimony to establish Defendants' standard of care, breach of that standard, and a causal nexus between the breach and Mr. Pierce's death.
Generally, expert testimony is required to prove the elements of a medical malpractice action, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony. Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228. In Pfiffner , the Supreme Court described the situations in which a plaintiff need not present an expert medical witness in a malpractice case: "Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient or leaving a sponge in a patient's body." Id. , 94-0924, p. 9, 643 So.2d at 1233.
In the instant case, however, the alleged malpractice was not the type of malpractice that was described in the Pfiffner case from which a layperson could infer negligence without the benefit of expert testimony. As in Pfiffner , Plaintiff alleges that her husband's death was caused by an unreasonable and unnecessary delay in diagnosis and treatment in circumstances involving a "complex medical condition," i.e., hypotension, anemia, renal failure, hyponatremia, elevated BUN/creatinine levels, a mass/fistula in the bladder, and ensuing vomiting, aspiration of vomit, and cardiac arrest. As stated in Pfiffner ,"[t]he causal connection between a patient's death and an unreasonable delay vis a vis a [physician's] diagnosis and treatment of a patient in circumstances involving a complex medical *159 condition ... is simply beyond the province of lay persons to assess." Id., 94-0992, p. 10, 643 So.2d at 1234. See also Schultz v. Guoth , 10-0343, p. 12 (La. 1/19/11), 57 So.3d 1002, 1009 ("[A] causal nexus between delayed treatment and a patient's death is not obvious and requires expert testimony.").
Because of the complex medical and factual issues involved, I find that this is not a case of obvious negligence pursuant to the exception created in Pfiffner . Without a medical expert, Plaintiff cannot sustain her burden of proving malpractice.
I would affirm the trial court's judgment.

University Healthcare System, L.C., d/b/a Tulane University Hospital and Clinic, an additional named defendant, was dismissed without prejudice on April 17, 2017.

EGD (Esophagogastroduodenoscopy ) is a fluoroscopic diagnostic test to examine and visualize a patient's esophagus, stomach, and duodenum.

Hyponatremia occurs when the concentration of sodium in the blood is abnormally low.

In their brief, defense counsel points the Court to pages 47-48 of Dr. Cooper's deposition; however, these pages are not included with the excerpts of Dr. Cooper's testimony included in the appellate record.

Diane Pierce on behalf of Roy Pierce v. Medical Center of Louisiana at New Orleans, et al. , Medical Review Panel number 13-MR-053.

The statement of disputed facts specifically referenced the Deposition of Ben Cooper, M.D., at p. 27.

We note that this is actually two assignments of error.

Subsequent to the issuance of the Samaha opinion, section 1299 of title 40 was re-designated as section 1231. La. R.S. 40:1231.8(H) provides in part: "Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness."

La. C.C.P. art. 966(A)(3) states: "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."

With respect to an inadequate discovery claim, this court has identified the following four relevant factors to be considered:
(i) whether the party was ready to go to trial,
(ii) whether the party indicated what additional discovery was needed,
(iii) whether the party took any steps to conduct additional discovery during the period between the filing of the motion and the hearing on it, and
(iv) whether the discovery issue was raised in the trial court before the entry of the summary judgment.
Roadrunner Transp. Sys. v. Brown , 17-0040, pp. 11-12 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1273 (citation omitted).

The Defendants, University Medical Center New Orleans and University Medical Center Management Corporation, filed its motion for summary judgment nine days after filing its answer, while Dr. Davis Ogitani and Danielle Johnson, R.N. filed their motion only two days after filing an answer to the lawsuit.

Rule 9.14 states:
All cases that have been allotted and all proceedings in connection therewith may, at the discretion of the Division Judge, be set for trial upon written motion filed by the counsel seeking such trial. In this instance, the motion to set shall be accompanied by a certificate that all parties have answered or preliminary defaults have been taken against them, including third-party defendants, all depositions and discovery have been completed, all exceptions and preliminary matters have been disposed of, and the matter is ready for a pre-trial conference or to be set for trial.
Alternatively, after the completion of a sufficient amount of discovery that allows the lawyers/parties to reasonably anticipate the length of the trial, any party may seek a status conference for the purpose of selecting a trial date appropriately in the future, as well as cut off dates for witness lists, expert reports, and discovery. At this status conference, a date for a pretrial conference to occur shortly before trial may also be selected. The dates selected will be reduced to a scheduling order signed the by parties and the court.