| | | |
|---|---|---|
| MEDICAL REVIEW PANEL KEVIN JORDAN (D) | * | NO. 2019-CA-0039 |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| COMMUNITY CARE HOSPITAL, J. ROBERT BARNES, M.D. AND ANWAR ISMAIL, M.D. | * | FOURTH CIRCUIT |
| | | STATE OF LOUISIANA |
| | * * * * * * * | |

| | |
|---|---|
| <u>CONSOLIDATED WITH:</u> | <u>CONSOLIDATED WITH:</u> |
| KEVIN LAWRENCE AND DENISE LAWRENCE, INDIVIDUALLY AND ON BEHALF OF THEIR DECEASED SON KEVIN JORDAN | NO. 2019-CA-0040 |
| VERSUS | |
| COMMUNITY CARE HOSPITAL, DR. J. ROBERT BARNES, DR. ANWAR ISMAIL, AND COMMUNITY CARE, L.L.C., EVANSTON INSURANCE COMPANY, AND LAMMICO | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2013-12198, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Tiffany G. Chase)

Albert A. Thibodeaux
DAVILLIER LAW GROUP, LLC
935 Gravier Street, Suite 1702
New Orleans, LA 70112

    COUNSEL FOR PLAINTIFF/APPELLANT

Raymond R. Egan, III
SCHROEDER & TRAHAN
One Galleria Boulevard, Suite 700
Metairie, LA 70001

Lorraine P. McInnis
E. John Litchfield
BERRIGAN LITCHFIELD, LLC
201 St. Charles Avenue, Suite 4204
New Orleans, LA 70170--4204

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**

**JULY 24, 2019**

This is a medical malpractice case. Kevin Lawrence and Denise Jordan

Lawrence (collectively the "Lawrences") commenced this case individually and on

behalf of their deceased son, Kevin Jordan ("Mr. Jordan").[1] Two sets of defendants

were named in this case: (i) the hospital defendants[2]—Community Care, LLC,

d/b/a Community Care Hospital ("CCH"); and Evanston Insurance Company,

CCH's insurer; and (ii) the physician defendants—Dr. J. Robert Barnes; Dr. Anwar

Ismail; and LAMMICO, Dr. Barnes' and Dr. Ismail's insurer. Both sets of

defendants filed "no-expert" motions for summary judgment. *See Winding v.*

*Bryan*, 14-0388, p. 1, n. 1 (La. App. 4 Cir. 9/17/14), 148 So.3d 956, 957.[3] From the

trial court's judgment granting both motions, the Lawrences appeal. We affirm.

---

[1] At the time of his death, Mr. Jordan was an unmarried, twenty-two year old.

[2] The petition identifies the hospital defendants as Community Care, L.L.C., the entity that owned the immovable property operated as a hospital, and Community Care Hospital. In their answer, the hospital defendants state that their correct name is Community Care, LLC, d/b/a Community Care Hospital.

[3] A "no-expert" motion for summary judgment is based on the well-settled jurisprudence requiring an expert witness to prove a medical malpractice claim in most cases. *Winding, supra.* Summarizing the jurisprudence, we observed in *Winding* the following:

> To prevail in a medical malpractice action based on the negligence of a physician, a plaintiff must establish the standard of care applicable to the physician, a violation by the physician of that standard of care, and a causal

1

**FACTUAL AND PROCEDURAL BACKGROUND**

In August 2013, the Lawrences filed a medical malpractice complaint with the Louisiana Division of Administration ("DOA"), under the Louisiana Medical Malpractice Act (the "MMA"),[4] against three qualified health care providers—a hospital, CCH; and two physicians, Dr. Barnes, and Dr. Ismail—seeking to invoke a medical review panel. In their complaint, the Lawrences alleged that the malpractice occurred in August 2012 when Mr. Jordan was receiving mental health treatment as an in-patient at CCH. Mr. Jordan allegedly was under the direct care and supervision of the physicians. The only drug the physicians were prescribing to Mr. Jordan was Invega Sustenna. According to the complaint, the physicians were negligent in administering, or allowing to be administered, the drug, which resulted in Mr. Jordan's death. The complaint further alleged the following:

> Specifically, it is believed that on or about August 20, 2012, Kevin Jordan was administered the drug Invega Sustenna too soon after receiving a more recent injection of Invega Sustenna. It is believed that this negligent administration of the drug caused Kevin

---

connection between the physician's alleged negligence and the plaintiff's injuries resulting therefrom. *Pfiffner v. Correa*, [94-0992, 94-0963,] 94-0924, p. 8 (La. 10/17/94), 643 So.2d 1228, 1233; La. R.S. 9:2794(A). Although the jurisprudence has recognized exceptions in instances of obvious negligence, these exceptions are limited to "instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can." *Williams v. Memorial Medical Center*, 2003-1806, p. 16 (La. App. 4 Cir. 3/17/04), 870 So.2d 1044, 1054; *Pfiffner*, [94-0992, 94-0963,] 94-0924 at p. 9, 643 So.2d at 1234; *see also Coleman v. Deno*, 2001-1517, p. 20 (La.1/25/02), 813 So.2d 303, 317. The jurisprudence has thus recognized that "an expert witness is generally necessary as a matter of law to prove a medical malpractice claim." *Williams*, 2003-1806 at p. 16, 870 So.2d at 1054; *Williams v. Metro Home Health Care Agency, Inc.*, 2002-0534, p. 5 (La. App. 4 Cir. 5/8/02), 817 So.2d 1224, 1228.

14-0388, p. 1, n. 1, 148 So.3d at 957 (quoting *Albers v. Vina Family Medicine Clinic*, 12-1484, pp. 3-4 (La. App. 4 Cir. 5/22/13), 116 So.3d 940, 942-43).

[4] In 2015, the Louisiana Legislature re-designated the MMA as La. R.S. 40:1231.1 to 1231.10.

Jordan to experience distress and cardiac arrest. In addition to the negligent administration of the drug, [CCH] and Doctors Barnes and Ismail failed to properly respond and render appropriate care to Kevin Jordan while he experience[d] distress as a result of the negligent administration of the drug which included cardiac arrest. [CCH] failed to ensure that it had the appropriate equipment and properly trained personnel to respond to medical situations which are foreseeable in a hospital that administers drugs such as Invega Sustenna. As a result of not having the appropriate equipment and trained personnel, [CCH] had to call for a City of New Orleans Emergency Medical Services (EMS) unit to administer emergency care to an in-patient resident of its facility.

For these reasons, the Lawrences alleged that the hospital and the physician providers were liable for Mr. Jordan's death.

While the panel proceeding was pending, CCH commenced a discovery proceeding in the trial court.[5] Thereafter, in December 2015, the Medical Review Panel (the "MRP"), consisting of three board-certified psychiatrists, unanimously found in favor of the hospital and the physician providers, concluding that the evidence did not support a finding that any of them failed to meet the applicable standard of care.

As to CCH, the MRP made the following three findings:

1. There is nothing in the record presented to the panel to indicate that the hospital and/or its employees deviated from the standard of care.

2. Medications were administered in a timely and appropriate manner. All physician orders were followed appropriately.

---

[5] A discovery proceeding is "a procedural mechanism to facilitate prosecution of the ultimate action, i.e., a medical malpractice suit." *Perritt v. Dona*, 02-2601, p. 11, n. 12 (La. 7/2/03), 849 So.2d 56, 64 (internal quotations and citations omitted); *see also* Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW, §21-3(f) (1996) (observing that "[a] party may file a petition in district court for assignment of a case number to facilitate discovery in the proceedings before the panel"). The statutory authority in the MMA for a discovery proceeding is set forth in La. R.S. 40:1231.8(D)(4), which provides that "[u]pon request of any party, or upon request of any two panel members, the clerk of any district court shall issue subpoenas and subpoenas duces tecum in aid of the taking of depositions and the production of documentary evidence for inspection and/or copying."

3. The patient was properly monitored throughout his hospital course. 911 was timely called.

As to Dr. Ismail, the MRP made the following two findings:

1. The records indicate that the patient was only given one (1) dose of Invega Sustenna, which was reasonable for the patient's condition. The patient took this medication previously with no history of a reaction.

2. There is nothing in the medical literature to indicate that there is any adverse reaction between Invega Sustenna and the development of a pulmonary embolism. There is no evidence to suggest a causative relationship between the patient's pulmonary embolism and Invega Sustenna.

As to Dr. Barnes, the MRP found the record devoid of any evidence he treated the patient.[6]

In March 2016, the Lawrences commenced this suit against the physician and the hospital defendants. In their petition, the Lawrences tracked the allegations that they made in their complaint to the DOA. After answering the petition, both sets of defendants filed a "no-expert" motion for summary judgment. The

---

[6] The physician defendants have continually maintained that Dr. Barnes had no involvement in Mr. Jordan's treatment and that he should never have been added at any stage to the Lawrences' claim. Their position is supported by Dr. Barnes' affidavit, which was attached to the physician defendants' motion for summary judgment. In his affidavit, Dr. Barnes attested as follows:

- That at all relevant times during which the decedent Kevin Jordan was a patient at Community Care Hospital (August 8-20, 201[2]), including the treatment dates mentioned in the Petition for Damages, Affiant was the medical director for the Outpatient Facility, which is separate and distinct from the Inpatient Facility. Decedent Kevin Jordan was a patient of the Inpatient Facility during his treatment at Community Care Hospital.

- That Affiant denies ever having provided or supervised any treatment whatsoever to the decedent Kevin Jordan, who was admitted to the Community Care Hospital Inpatient Facility (hereinafter "Inpatient") of Community Care, LLC, over which Affiant has no supervisory capacity, involvement, or ownership.

- That he has not had any supervisory capacity over the Inpatient Facility or over Dr. Anwar Ismail since July of 2010, at which time Affiant became the medical director solely for the Outpatient Facility, and at which time Dr. Anwar Ismail became the director for the Inpatient Facility.

physician defendants filed their motion on July 3, 2017;[7] the hospital defendants filed their motion on July 31, 2017.[8]

The trial court set the summary judgment motions for hearing five times. First, the motions were set for September 29, 2017. Thereafter, the Lawrences filed a motion to transfer and consolidate the malpractice case with the earlier-filed discovery proceeding. Both sets of defendants consented to the transfer and consolidation. In October 2017, the physician defendants re-filed their summary judgment motion in the consolidated case to obtain a new hearing date; the hospital defendants filed a motion to reset their summary judgment motion. Both summary judgment motions were reset for November 30, 2017.

Thereafter, the Lawrences filed an unopposed motion to reset the hearing to February 8, 2018, for two reasons—counsel's failure to receive timely notice of the reset hearing and the Lawrences' need for additional time to respond to the motions for summary judgment. The motion to reset was granted.

On January 24, 2018, the Lawrences filed an opposition to the defendants' motions for summary judgment. Attached to their opposition were CCH's discovery responses and Mr. Lawrence's affidavit. In his affidavit, Mr. Lawrence attested as follows:

---

[7] The physician defendants attached the following four items to their summary judgment motion: (i) the Lawrences' Complaint filed with the DOA; (ii) the MRP's opinion; (iii) the Interrogatories and Requests for Production of Documents propounded by the physician defendants on the Lawrences in August 2016; and (iv) Dr. Barnes' affidavit.

[8] The hospital defendants attached the following five items to their summary judgment motion: (i) the Lawrences' Complaint filed with the DOA; (ii) the MRP's opinion; (iii) the Lawrences' petition for damages filed in the trial court; (iv) CCH's Interrogatories and Request for Production; and (v) the Lawrences' Answers to Interrogatories and Responses to Request for Production.

> I have retained Dr. Edward Fann [a board-certified psychiatrist] who will testify in the above consolidated action as an expert witness.
>
> As evidence of my retaining Dr. Edward Fann, attached to this affidavit please find . . . a letter from my attorney to Dr. Fann's representative [an expert broker], a copy of the contract for representation by and between the plaintiffs and Dr. Fann and a copy of the certified check for payment to Dr. Fann.

Two days before the scheduled February 8, 2018 hearing date, the Lawrences filed a motion to continue and reset based on their counsel's temporary illness. The defendants objected to the continuance. Over the defendants' objections, the trial court granted the motion and reset the hearing for April 5, 2018.

Counsel for all parties appeared at the April 5, 2018 hearing (the "April Hearing").[9] At the April Hearing, the trial court judge posed the following question to the Lawrences' counsel: "The issue is that they ruled—the panel finding was in 2016, and it was against you and you (the plaintiffs) need an expert in order for you to go forward, if I'm not mistaken." In response, the Lawrences' counsel replied: "You're absolutely correct and we have retained an expert." At that hearing, the Lawrences' counsel conceded that he had not yet obtained an expert report, stating: "I'm not going to sugar coat it. . . . We have not obtained a written report from the expert." The Lawrences' counsel then requested that the trial court exercise its discretion and grant the Lawrences an extension to file one.

Although the trial court at the April Hearing characterized this as a "pretty old case," involving alleged malpractice that occurred in 2012, the trial court

---

[9] Although the court reporter states the April Hearing was held on April 4, 2018, the hearing was set for April 5, 2018. The trial court, in the transcript, expressly states on the record that "[t]oday's date is the 5th."

granted the Lawrences' counsel an additional forty-five days to obtain an expert's report. The trial court orally ordered that the defendants' motions be reset for May 17, 2018. The trial court, however, ordered that if the Lawrences failed to secure an expert report by that date, the defendants' summary judgment motions would be granted on May 17, 2018. The trial court expressly warned the Lawrences' counsel that if Dr. Fann was unable to provide a report, the Lawrences were to obtain a report from another expert by the same deadline. The Lawrences' counsel voiced no objection to the trial court's order.

On May 17, 2018, the defendants' counsel appeared for the hearing; the Lawrences' counsel did not appear. The defendants' counsel informed the trial court that they had not heard from the Lawrences' counsel on that date and that they had not received any opposition or expert's report from the Lawrences' counsel. Given these circumstances, the trial court, for the reasons stated at the April Hearing, granted both motions for summary judgment and dismissed the Lawrences' claims with prejudice.

At some time on the day of the hearing, the Lawrences filed a motion for extension of time to submit an expert report. In the motion, the Lawrences represented as follows:

- [The trial court] previously set a deadline o[f] Thursday, May 17th to submit its expert's report in opposition to Defendants' Motion for Summary Judgment.

- The Plaintiffs['] retained expert, Dr. Joyce Davidson, is unable to provide her expert's report in this matter on or before the expiration of the current deadline, Thursday, May 17, 2018.

Based on those representations, the Lawrences' counsel requested a fourteen-day extension of the deadline to file the expert's report. On May 30, 2018, the trial court signed an order granting the motion for extension of time, extending the deadline to May 31, 2018. Meanwhile, on May 23, 2018, notice of the signing of the judgment granting both motions for summary judgment was mailed. This appeal followed.

## DISCUSSION

Although the Lawrences assign five errors on appeal,[10] we organize our analysis into three parts—summary judgment, continuance, and reasons for judgment. We separately address each part.

**Summary Judgment**

Appellate courts review the granting of a summary judgment motion *de novo*. *Sislo v. New Orleans Ctr. for Creative Arts*, 16-0178, p. 4 (La. App. 4 Cir. 8/17/16), 198 So.3d 1202, 1205 (citing *Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83). In so doing, appellate courts apply "the same criteria governing the trial court's consideration of whether summary judgment is

---

[10] The Lawrences assign the following five errors:

1. The trial court erred in ruling that the Plaintiffs in this case must present expert testimony in order to meet their burden of proof;

2. The trial court erred in granting the Defendants' Motions for Summary Judgment when the Plaintiffs' affidavit presented a genuine issue of material fact;

3. The trial court erred in ruling on the Motions for Summary judgment without affording the Plaintiffs an adequate opportunity to conduct discovery;

4. The trial court erred by granting the Plaintiffs an extension of time to submit an expert report yet ruling in favor of Defendants during the extended period; and

5. The trial court erred in failing to issue reasons on the record or in writing when granting Defendants' Motions for Summary Judgment.

appropriate." *Wilson v. Calamia Const. Co.*, 11-0639, p. 3 (La. App. 4 Cir. 9/28/11), 74 So.3d 1198, 1200.

The summary judgment procedure is "designed to secure the just, speedy, and inexpensive determination of every action," and the procedure is favored. La. C.C.P. art. 966(A)(2). The summary judgment procedure is used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *See* La. C.C.P. art. 966(A)(3). The purpose of the summary judgment procedure is "to pierce the pleadings and to assess the proof in order to see whether there exists a genuine need for trial." *Bridgewater v. New Orleans Reg'l Transit Auth.*, 15-0922, p. 4 (La. App. 4 Cir. 3/9/16), 190 So.3d 408, 411 (citing *Hines v. Garrett*, 04-0806, p. 7 (La. 6/25/04), 876 So.2d 764, 769).

The rules governing the summary judgment procedure are codified in La. C.C.P. arts. 966 and 967. *Winding v. Bryan*, 14-0388, p. 6 (La. App. 4 Cir. 9/17/14), 148 So.3d 956, 960. Article 966 sets forth the standard for granting a summary judgment motion as follows: "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

Article 966 also provides for a shifting burden of proof. La. C.C.P. art. 966(D)(1).[11] A moving party may discharge the moving party's burden of

---

[11] La. C.C.P. art. 966(D)(1) provides as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one

proof by "'pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.'" *Samaha*, 07-1726, p. 9, 977 So.2d at 886 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)).

Article 967 addresses the non-moving party's response to a properly supported summary judgment motion. When a properly supported summary judgment motion is filed, the non-moving party may not rest on the mere allegations of his pleading; rather the non-moving party's response "must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). If the non-moving party fails to respond, "summary judgment, if appropriate, shall be rendered against him." *Id.*

"The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case." *Lejeune v. Steck*, 13-1017, p. 5 (La. App. 5 Cir. 5/21/14), 138 So.3d 1280, 1283; *see also Maddox v. Howard Hughes Corp.*, 19-0135, p. 5 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 337 (observing that whether a fact is an essential or a material one is a determination that must be made based on the applicable substantive law). The substantive law applicable to this case is La. R.S. 9:2794, the statutory provision governing medical malpractice actions.[12]

---

or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

[12] La. R.S. 9:2794 provides, in pertinent part, as follows:

A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq. . . . , the plaintiff shall have the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed

Under La. R.S. 9:2794, a plaintiff in a medical malpractice case is required to prove, by a preponderance of the evidence, the following three elements: (i) the standard of care applicable to the defendant; (ii) the defendant's breach of the standard of care; and (iii) the existence of a causal connection between the breach and the resulting injury. *Samaha*, 07-1726, p. 5, 977 So.2d at 883-84. When, as here, a plaintiff is seeking to impose liability on a hospital for the acts of its employees, the applicable standard of care as to both the hospital and the physician defendants is the same—the standard set forth in La. R.S. 9:2794. *Williams v. Mem'l Med. Ctr.*, 03-1806, p. 16, n. 7 (La. App. 4 Cir. 3/17/04), 870 So.2d 1044, 1054. Moreover, "the plaintiff must prove that the hospital caused the injury when it breached its duty." *Guardia v. Lakeview Reg'l Med. Ctr.*, 08-1369, p. 4 (La. App. 1 Cir. 5/8/09), 13 So.3d 625, 628.

The Louisiana Supreme Court has observed that "by law, the report of the expert opinion reached by the medical review panel is admissible as evidence in any action subsequently brought by the claimant in a court of law" and that "[t]his undoubtedly includes a summary judgment proceeding in a medical malpractice lawsuit." *Samaha*, 07-1726, pp. 17-18, 977 So.2d at 891; *see* La.

---

to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

R.S. 40:1231.8(H).[13] Hence, it is well settled that a defendant-health care provider can use the medical review panel's favorable opinion to support a summary judgment motion. *See Snelling v. LSU Health Sciences Ctr.-Monroe*, 43,332, pp. 6-7 (La. App. 2 Cir. 6/4/08), 986 So.2d 216, 220-21 (citing *Samaha*, *supra*).[14]

A defendant-health care provider does not have the burden of disproving medical malpractice; rather, a defendant-health care provider only must point out that the plaintiff cannot support his claim. Once a defendant-health care provider has established an absence of factual support for an essential element of the plaintiff's claim, the plaintiff must come forth with evidence to preclude summary judgment. *See* La. C.C.P. art. 967(B).

Given the complex factual and medical issues presented in a medical malpractice case, "a plaintiff will likely fail to sustain his burden of proving his claim under LSA-R.S. 9:2794's requirements without medical experts." *Pfiffner v.*

---

[13] La. R.S. 40:1231.8(H) provides as follows:

> Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness. If called, the witness shall be required to appear and testify. A panelist shall have absolute immunity from civil liability for all communications, findings, opinions and conclusions made in the course and scope of duties prescribed by this Part.

[14] In *Snelling*, the use of the MRP by a defendant-health care provider was summarized as follows:

> In the medical malpractice jurisprudence involving summary judgments, MRP opinions finding no malpractice have been offered by defendants in moving for summary judgment. The defendant, who does not have the burden of proof, has used the favorable MRP ruling "to point out to the court the absence of factual support" for the alleged malpractice. The opinion of the MRP is based upon a review of the medical facts and the expert opinions of the doctors. As discussed by our Supreme Court in its recent ruling in *Samaha v. Rau*, *supra*, the defendant's use of the MRP in support of summary judgment "does serve as evidence that there was expert medical testimony that [the defendant] had not failed to act within the appropriate standard of care and, thus, was evidence which tended to negate the plaintiffs' claims."

*Correa*, 94-0992, 94-0963, 94-0924, pp. 9-10 (La. 10/17/94), 643 So.2d 1228, 1234. Thus, the general rule is that "expert testimony is needed to establish the elements of [i] the applicable standard of care, [ii] whether the standard of care was breached by the defendant's conduct, and [iii] whether that breach resulted in any injuries to the plaintiffs." *Edwards v. Raines*, 35,284, p. 7 (La. App. 2 Cir. 10/31/01), 799 So.2d 1184, 1188. Although a jurisprudentially-crafted exception for obvious negligence has been recognized, the exception is a narrow one that applies only to "instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can." *Pfiffner*, 94-0992, 94-0963, 94-0924, p. 9, 643 So.2d at 1234.[15]

The requirement of producing expert medical testimony is especially apt when, as here, the defendants have filed summary judgment motions and supported such motions with expert opinion evidence that their treatment met the applicable standard of care. *Lee v. Wall*, 31,468, 31,469, p. 4 (La. App. 2 Cir. 1/20/99), 726 So.2d 1044, 1046-47; *Henderson v. Homer Memorial Hosp.*, 40,585, p. 14 (La. App. 2 Cir. 1/27/06), 920 So.2d 988, 996. In this context, the jurisprudence has routinely upheld the granting of a "no-expert" motion for summary judgment. *See*, *e.g.*, *Williams v. Memorial Med. Ctr.*, 03-1806 (La. App. 4 Cir. 3/17/04), 870 So.2d 1044.

Application of the rules governing summary judgment in the instant case is straightforward. Both sets of defendants filed a "no-expert" motion for summary

---

[15] Examples of obvious negligence include "fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body." *Pfiffner*, 94-0992, 94-0963, 94-0924, p. 9, 643 So.2d at 1233. Other examples include failing to attend a patient when the circumstances demonstrate the serious consequences doing so; failing of an on-call physician to respond to an emergency when he knows, or should of not have known, his presence was necessary; and leaving a seriously injured patient to bleed to death in an emergency room. *Id.*, 94-0992, 94-0963, 94-0924, p. 9, 643 So.2d at 1234.

judgment. The defendants pointed out that the Lawrences had not identified an expert to support their claims and provided the Lawrences' discovery responses, which reflected that fact.[16] The defendants also provided a copy of the MRP's unanimous opinion in their favor. As noted, the MRP found that neither the hospital nor the physicians breached the standard of care. By introducing the MRP opinion, the defendants pointed out the absence of factual support for a necessary element of the Lawrences' claim. The defendants thus shifted the burden to the Lawrences to present evidence to support their allegations and to establish that they will be able to meet their evidentiary burden of proof at trial. *See* La. C.C.P. art. 966D(1); *Samaha*, 07-1726, pp. 11-12, 977 So.2d at 887-88.

On appeal, the Lawrences raise four issues regarding the propriety of the trial court granting the defendants' summary judgment motions:

- Whether the defendants' statement of law, which the trial court adopted, that expert medical testimony is required to establish a medical malpractice claim is erroneous;

- Whether the obvious-negligence exception applies here;

- Whether the *Deruise-Pierce* case[17] is factually and procedurally similar to this case; and

- Whether Mr. Lawrence's affidavit creates a genuine issue of material fact.

We separately address each issue.

*Expert Medical Testimony Requirement*

The Lawrences contend that the defendants' summary judgment motions are premised on an incorrect statement of the applicable laws governing the type and

---

[16] As noted elsewhere in this opinion, the Lawrences subsequently produced Mr. Lawrence's affidavit. In his affidavit, Mr. Lawrence attested that the Lawrences had retained an expert, Dr. Fann.

[17] *Deruise-Pierce v. Univ. Healthcare Sys., L.C.*, 18-0160 (La. App. 4 Cir. 10/24/18), 258 So.3d 150, *writ denied*, 18-1886 (La. 1/28/19), 262 So.3d 903.

nature of evidence that plaintiffs are required to present to prevail in a medical malpractice case. According to the Lawrences, the defendants' incorrect statement of law, which the trial court adopted,[18] is that expert medical testimony is required to establish a medical malpractice claim. The Lawrences emphasize that La. R.S. 9:2794 does not expressly state that expert medical testimony is required in order for plaintiffs to meet their evidentiary burden of proof. They further emphasize that the statute expressly states that the principle of *res ipsa loquitor* can be applied in this context pursuant to La. R.S. 9:2794(C).[19] Finally, they cite the Supreme Court's holding in *Pfiffner*, *supra*, that expert medical testimony is not required in all medical malpractice cases.

---

[18] The Lawrences contend that the trial court adopted this incorrect statement of law at the April Hearing. In support, the Lawrences quote the following question the trial court posed to their counsel at the hearing: "[t]he issue is that they ruled—the panel finding was in 2016, and it was against you and you (the plaintiffs) need an expert in order for you to go forward, if I'm not mistaken." The Lawrences' counsel's response to the trial court's question was as follows: "You're absolutely correct and we have retained an expert." The Lawrences' counsel thus conceded the need for expert medical testimony in the trial court.

[19] La. R.S. 9:2794(C) provides as follows:

> In medical malpractice actions the jury shall be instructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician . . . . The jury shall be further instructed that injury alone does not raise a presumption of the physician's . . . negligence. The provisions of this Section shall not apply to situations where the doctrine of res ipsa loquitur is found by the court to be applicable.

In *Maddox v. Howard Hughes Corp.*, 19-0135, p. 9 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 340, this court summarized *the res ipsa loquitur* doctrine as follows:

> *Res ipsa loquitur* is "a rule of circumstantial evidence whereby negligence is inferred on the part of the defendant because the facts indicate that the defendant's negligence is the most probable cause of the injury." *Res ipsa loquitur* is a qualification to the general rule against presuming negligence based on the happening of an accident and, thus, must be "sparingly applied."

*Id.* (internal citations omitted). "In medical malpractice actions based on *res ipsa loquitur* the plaintiff generally must use expert testimony to establish that the plaintiff's injury is a type which ordinarily would not occur in the absence of negligence." *Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So.2d 654, 667, n. 11 (La. 1989); *see also Henderson v. Homer Mem'l Hosp.*, 40,585, p. 15 (La. App. 2 Cir. 1/27/06), 920 So.2d 988, 996 (citing *Cangelosi*, *supra*).

Although the Lawrences are correct that expert medical testimony is not required in all medical malpractice case, the jurisprudence is well-settled that expert medical testimony is required in most cases. Indeed, "unless the case involves some obvious act from which a lay person can infer negligence, such as amputating the wrong limb or leaving a sponge in a patient's body, the absence of expert testimony as to any of the essential elements of the plaintiff's malpractice claim will preclude the imposition of liability." *Gonzales v. Ochsner Clinic Found.*, 14-873, p. 6 (La. App. 5 Cir. 5/14/15), 170 So.3d 1099, 1103 (citing *Samaha*, *supra*). Stated otherwise, unless the obvious-negligence exception recognized in the *Pfiffner* case applies, expert medical testimony is required to establish a medical malpractice claim.

*Obvious-Negligence Exception*

A key issue here is whether the obvious-negligence exception applies as to either the hospital or the physician defendants.[20] As to the physician defendants, the alleged malpractice relates to the prescribing and administering of the drug Invega Sustenna. As the physician defendants point out, "[t]he uses and contraindications of the drug Invega Sustenna are not within the average lay person's knowledge, and the appropriateness of the administration of this drug to this particular psychiatric patient would also not be common knowledge." Likewise, the element of causation as to the physician defendants would not be common knowledge. Indeed, the MRP expressly reasoned that "one (1) dose of Invega Sustenna . . . was reasonable for the patient's condition," that "[t]here is nothing in the medical literature to indicate that there is any adverse reaction

---

[20] The Lawrences' argument on appeal regarding the obvious-negligence exception is directed specifically to the hospital defendants; they make no specific argument as the physician defendants. Nonetheless, we address this issue as to both sets of defendants.

between Invega Sustenna and the development of pulmonary embolism," and that "[t]here is no evidence to suggest a causative relationship between the patient's pulmonary embolism and Invega Sustenna." Thus, as to the physician defendants, expert medical testimony is required here.

As to the hospital defendants, the Lawrences' argument is that negligence can be inferred to have occurred at CCH because its staff, in response to Mr. Jordan's emergency situation, failed to take any action other than calling 911— emergency medical services ("EMS"). The Lawrences contend that "[t]here is no evidence that any staff personnel [at CCH] including Dr. Anwar Ismail and staff nurses performed CPR or any other life sustaining procedure on Kevin Jordan." Continuing, the Lawrences emphasize that CCH acknowledged, in its discovery responses, that it is "a joint commission accredited hospital." The Lawrences contend that a lay person may infer negligence here in that CCH's staff had to call 911 (EMS) to respond to a medical emergency at an accredited hospital.

The Lawrences, however, offer no evidence in support of this contention; rather, this contention is based solely on their conclusory allegations. "Mere speculation will not defeat a motion for summary judgment, and conclusory allegations, improbable inferences, and unsupported speculation are insufficient to support a finding that a genuine issue of material fact exists." *Kinch v. Our Lady of Lourdes Reg'l Med. Ctr.*, 15-0603, pp. 7-8 (La. App. 3 Cir. 12/9/15), 181 So.3d 900, 905 (citing *Scott v. City of Shreveport*, 49,944 (La. App. 2 Cir. 6/24/15), 169 So.3d 770); *see also In re Melancon*, 05-1702, p. 7 (La. 7/10/06), 935 So.2d 661, 666 (observing that "[a]rguments and pleadings are not evidence"); *Smith v. Casino New Orleans Casino*, 12-0292, p. 10 (La. App. 4 Cir. 10/3/12), 101 So.3d 507, 514 (quoting *Todd v. State Through Dep't of Social Services, Office of*

*Community Services*, 96-3090, p. 16 (La. 9/9/97), 699 So.2d 35, 43) (observing that "'[p]roof which establishes only possibility, speculation, or unsupported probability does not suffice to establish a claim.'").

The same allegations that the Lawrences make regarding CCH's negligence are set forth in the complaint considered by the MRP. The MRP, after reviewing the record and considering the allegations, expressly found in CCH's favor, reasoning as follows: "[t]he patient was properly monitored throughout his hospital course," and "911 was timely called."

Contrary to the Lawrences' contention, expert medical testimony is required here to rebut the MRP's findings in CCH's favor. These allegations of malpractice do not fall within the narrow scope of the obvious-negligence exception. A hospital staff's decision, in response to a medical emergency, to call 911 (EMS) is a transfer decision—a decision that a patient needs to be moved from one facility to another. "[N]egligence regarding transfer decisions cannot likely be established without expert medical testimony." *Trotter v. Baton Rouge Gen. Med. Ctr.*, 15-1577, p. 8 (La. App. 1 Cir. 3/21/17) (*unpub.*), 2017 WL 1078614, *3 (citing *Coleman v. Deno*, 01-1517, p. 20 (La. 1/25/02), 813 So.2d 303, 317). Transfer decisions cannot be divorced from overall medical care decisions. *Id.*

Even assuming, *arguendo*, that the Lawrences could establish CCH's breach of the applicable standard of care without expert medical testimony, they still would be required to produce expert medical testimony to establish causation. "[A] causal nexus between delayed treatment and a patient's death is not obvious and

requires expert testimony." *Schultz v. Guoth*, 10-0343, p. 12 (La. 1/19/11), 57 So.3d 1002, 1009 (citing *Pfiffner*, *supra*).[21]

Summarizing, the obvious-negligence exception is inapplicable here. The Lawrences' allegations of malpractice against both the hospital and the physician defendants require expert medical testimony to establish the standard of care, the breach of the standard of care, and causation.

### The *Deruise-Pierce* Case is Distinguishable

In further support of their argument that expert medical testimony was not required, the Lawrences cite this court's recent decision in *Deruise-Pierce*. They contend that the *Deruise-Pierce* case is factually and procedurally similar to this case.

In *Deruise-Pierce*, this court reversed the trial court's decision granting the defendants' summary judgment motion. There, the plaintiffs framed the single, material fact in dispute as whether the defendants breached the standard of care "'when they transported and abandoned [the patient] Roy Pierce in the hallway outside of the [r]adiology suite when he was in an acutely decompensated, mentally altered hypotensive state.'" *Deruise-Pierce*, 18-0160, p. 5, 258 So.3d at 153. Given the plaintiffs' failure to present any independent expert medical testimony, the trial court granted the defendants' summary judgment motion.

---

[21] *See also Milke v. Ratcliff Animal Hosp., Inc.*, 48,130, p. 17 (La. App. 2 Cir. 7/10/13), 120 So.3d 343, 353 (rejecting the argument that either the obvious-negligence exception or *res ipsa loquitur* doctrine applied and reasoning that "[w]hile the plaintiff presented evidence [an Internet article], albeit incompetent evidence, that 99.95% of healthy dogs recover from surgery and that only 1 in 895 suffer death, that statistic alone does not imply that the .05% mortality is due to negligence"); *Henderson v. Homer Mem'l Hosp.*, 40,585, p. 15 (La. App. 2 Cir. 1/27/06), 920 So.2d 988, 996 (observing that "where the plaintiffs have failed to establish a causal link between the nursing care and the harm complained of, they have also failed to show a probability that the injury would not have occurred without negligence").

19

Reversing, this court reasoned that there was expert medical evidence, in the form of the deposition testimony of the treating radiologist, Dr. Benjamin Cooper, supporting an inference that the standard of care was violated. *Deruise-Pierce*, 18-0160, p. 10, 258 So.3d at 156.[22] This court further reasoned that the trial court erred in finding, as a matter of law, that expert medical testimony was necessary because "depending upon how long Mr. Pierce was left [outside of the radiology suite], such a failure may well be one of such obvious negligence that no expert testimony would be necessary to demonstrate a breach of the standard of care." *Deruise-Pierce*, 18-0160, p. 9, 258 So.3d at 155-56.

Continuing, we reasoned that "the dearth of facts in the record regarding what actually happened to Mr. Pierce after he was transported to the hallway outside of the radiology suite" precluded a finding that a lay person could not infer causation as well as an expert could. *Deruise-Pierce*, 18-0160, p. 11, 258 So.3d at 156. Thus, we observed that an unreasonable delay in treatment can be the basis for applying the obvious-negligence exception; however, we determined that the record on appeal was unclear if the facts were sufficiently egregious for the exception to apply.

---

[22] As we observed, the radiologist, Dr. Cooper, testified in his deposition to the following:

> [Dr. Cooper] testified that it was unusual for someone incapable of consenting to be sent to radiology, that the change in the patient's condition overnight had not been conveyed to him, and as a result the patient was "not in the place where that patient should [have been] in that moment." Dr. Cooper also testified that he agreed with the statement that Mr. Pierce should not have been transported to the radiological suite in the condition he was in, because he was unstable, and further testified that Mr. Pierce's blood pressure reflected a dangerously hypotensive state. He also stated that he could not say one way or the other whether Mr. Pierce would have had a better chance of surviving if he had been in the ICU rather than the radiology suite. As well, he acknowledged that the medical record doesn't indicate that Mr. Pierce was transported or attended by anyone other than a standard escort (transport employee).

*Deruise-Pierce*, 18-0160, p. 4, 258 So.3d at 153.

In this case, unlike in the *Deruise-Pierce* case, the record is devoid of any medical evidence supporting the Lawrences' claims. The only admissible medical evidence in the record is the MRP opinion unanimously in favor of the hospital and physician providers. Given the nature of the allegations of malpractice in this case, expert medical testimony is required to establish the Lawrences' claims as to both sets of defendants. Again, mere conclusory allegations are insufficient to defeat a properly supported motion for summary judgment. *Kinch*, *supra*. The Lawrences' reliance on the *Deruise-Pierce* case, thus, is misplaced.

*Mr. Lawrence's Affidavit*

The Lawrences contend that Mr. Lawrence's affidavit, in which he identified an expert (Dr. Fann), is sufficient to establish a genuine issue of material fact. They emphasize that the defendants, in their summary judgment motions, identified as undisputed the fact that the Lawrences had not retained an expert. They contend that Mr. Lawrence's statement in his affidavit that the Lawrences had retained an expert contradicts this fact.

As the defendants point out, the dispositive issue is not whether the Lawrences have retained an expert; rather, the issue is whether the Lawrences have produced expert medical testimony to support of their claims. A plaintiff cannot create an issue of fact simply by naming in an affidavit an expert that he has retained and claiming that expert will provide a report at some time in the future.[23]

---

[23] *See Gorbach v. Tulane Univ. Med. Ctr.*, 11-1575 (La. App. 4 Cir. 4/11/12), 89 So.3d 429 (affirming grant of "no-expert" summary judgment because the plaintiffs merely indicated that they had obtained an expert, but did not submit an affidavit or other competent summary judgment evidence to oppose the motion); *Reinke v. Kordisch*, 13-1093, p. 11 (La. App. 3 Cir. 3/5/14), 134 So.3d 176, 182 (citing *Venable v. Dr. X*, 95-1634 (La. App. 3 Cir. 4/3/96), 671 So.2d 1249, and observing that given the "trial court's finding that medical expert testimony would be required for Ms. Reinke to establish her burden of proof at trial, any statements made in her affidavit would not be sufficient to defeat summary judgment"); *Mitchell v. Kenner Reg'l Med. Ctr.*, 06-620, p. 7 (La. App. 5 Cir. 1/30/07), 951 So.2d 1193, 1197 (observing that "merely

As this court has observed, "identifying the plaintiff's expert without an affidavit or deposition testimony in which the expert actually testifies under oath in a manner favorable to the plaintiff's position is insufficient opposition to a properly supported summary judgment motion." *Pierre-Ancar v. Browne-McHardy Clinic*, 00-2409, 00-2410, p. 7 (La. App. 4 Cir. 1/16/02), 807 So.2d 344, 349 (citing *Edwards v. Raines*, 35,284 (La. App. 2 Cir. 10/31/01), 799 So.2d 1184). Such is the case here.

In his affidavit, Mr. Lawrence simply attests that he has retained an expert (Dr. Fann) who would prepare a report. As the physician defendants point out, Mr. Lawrence's affidavit contains no confirmation or communication from the expert agreeing to the retention. Moreover, in their request for an extension of time, the Lawrences identified a different expert (Dr. Davidson). At no time, however, did the Lawrences submit a medical expert's testimony, in any form, in support of their medical malpractice claims. Again, merely identifying a retained expert is insufficient to create a genuine issue of material fact. The Lawrences' reliance on Mr. Lawrence's affidavit as creating a genuine issue of material fact is misplaced.

**Continuance**

Although decisions regarding rulings on summary judgment motions are reviewed under a *de novo* standard, decisions regarding a trial court's docket, case management, and rulings on motions to continue are reviewed under an abuse of discretion standard. *Rowley v. Eye Surgery Ctr. of Louisiana, Inc.*, 06-1243, p. 4 (La. App. 4 Cir. 4/4/07), 956 So.2d 680, 683; *Succession of Feingerts*, 17-0265,

---

referring to an expert, as Mr. Mitchell did in his Answers to Interrogatories, will not defeat a properly supported motion for summary judgment"); *Robles v. ExxonMobile*, 02-0854, p. 5 (La. App. 1 Cir. 3/28/03), 844 So.2d 339, 342 (observing that "merely referring to an expert will not defeat a properly supported motion for summary judgment").

pp. 3-5 (La. App. 4 Cir. 12/21/17), 234 So.3d 1081, 1085-86. "'A trial judge has wide discretion in the control of his docket, in case management and in determining whether a motion for continuance should be granted.'" *Arceneaux v. Lafayette Gen. Med. Ctr.*, 17-516, p. 10 (La. App. 3 Cir. 7/26/17), 248 So.3d 342, 349 (quoting *Jackson v. Royal Ins. Co.*, 97-723, p. 3 (La. App. 3 Cir. 12/17/97), 704 So.2d 424, 426).

There is no absolute right to delay action on a summary judgment motion until discovery is completed. *Simoneaux v. E.I. du Pont de Nemours & Co.,* 483 So.2d 908, 912 (La. 1986). Unless the non-moving party—here the plaintiffs— shows a probable injustice, a ruling on a summary judgment motion should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact. *Id.* at 913. A trial judge has the discretion to enter a summary judgment after the filing of affidavits, or the judge may allow further affidavits or discovery to take place. La. C.C.P. art. 967(C). The only requirement is that the parties be afforded an "opportunity for adequate discovery." La. C.C.P. art. 966(A)(3).

Here, the Lawrences contend that the trial court erred in granting the defendants' summary judgment motions prematurely—before the Lawrences were afforded an opportunity for adequate discovery. The Lawrences' contention that summary judgment was prematurely granted is premised on the timing of the defendants' filing of the motions for summary judgment. The Lawrences stress that the physician defendants filed their motion two weeks before the Lawrences were provided with the hospital defendants' discovery responses. They also stress that the hospital defendants filed their motion on the same day they provided their discovery requests to the Lawrences. The Lawrences, thus, contend that they were

23

"not afforded a reasonable opportunity to engage in follow up discovery on the initial discovery respon[ses] provided by [the hospital defendants]."

Although the Lawrences' argument might have had merit if the summary judgment motions were heard on the initial hearing date (September 29, 2017), the motions were continued four times and were not ruled upon until eight months later (May 17, 2018). Indeed, the procedural timeline of this case[24] belies the

_____

[24] The procedural time line of this case is as follows:

- August 17 to 20, 2012—The complained of treatment occurred. Given Mr. Jordan died on August 20, 2012, there was no ongoing treatment.

- August 19, 2013—The Lawrences filed a complaint with the DOA, seeking to invoke a medical review panel. As a result, the Lawrences could have availed themselves of the discovery proceeding procedure under La. R.S. 40:1231.8.

- December 1, 2015—The MRP held in the hospital and the physician providers' favor.

- March 16, 2016—The Lawrences filed this medical malpractice case in the trial court.

- July 3, 2017—The physician defendants filed their motion for summary judgment, which was set for September 29, 2017.

- July 31, 2017—The hospital defendants filed their motion for summary judgment, which also was set for September 29, 2017.

- September 13, 2017—The Lawrences filed a motion to transfer and consolidate the malpractice case with the earlier-filed discovery proceeding. Both sets of defendants consented to the transfer and consolidation.

- October 9, 2017—The physician defendants re-filed their summary judgment motion in the new section of court to get a hearing date, which was set for November 30, 2017. The hospital defendants likewise filed a motion to reset their summary judgment motion.

- November 13, 2017—Mr. Lawrence's counsel filed an unopposed motion to reset the hearing to February 8, 2018, which was granted.

- February 6, 2018—Mr. Lawrence's counsel moved to continue the hearing, which was granted; the hearing was reset for April 5, 2018.

- April 5, 2018—The Lawrences were granted until May 17, 2018 to produce an expert's report.

- May 17, 2018—The defendants' summary judgment motions were granted.

Lawrences' contention that they were not afforded an opportunity for adequate discovery. *See* La. C.C.P. art. 966A(3).

The procedural timeline here for conducting discovery was very long. The Lawrences filed their initial petition to invoke the MRP in 2013 and their petition for damages in March 2016. The physician and hospital defendants both filed their summary judgment motions in July 2017. The trial court set the summary judgment motions for hearing five times. On the fourth hearing date (the April Hearing), the parties appeared before the trial court; and the court set a firm deadline by which the Lawrences' expert medical testimony was required to be filed—May 17, 2018. At the April Hearing, the trial court commented regarding the age of this case and expressly found that the Lawrences' delay to secure an expert already was unreasonable. When the Lawrences failed to comply with the May 17, 2018 deadline, the trial court granted the defendants' motions for summary judgment. Given these circumstances, we cannot conclude the trial court abused its discretion in failing to grant any further continuances for the Lawrences to produce expert medical testimony.

The Lawrences alternatively argue that the trial court erred in granting their motion for extension of time—until May 31, 2018—to submit an expert report, yet granting the defendants' summary judgment motions "during the period of time concurrent with the extended time for [the Lawrences] to submit and file [their] expert report."[25] The physician defendants counter that no expert report was timely

---

[25] As noted elsewhere in this opinion, the Lawrences' counsel failed to appear at the May 17, 2018 hearing; instead, on that same date, the Lawrences' counsel filed a motion for extension of time to submit an expert report. The motion for extension of time was not time-stamped. When the trial court signed the order granting the motion for extension of time on May 30, 2018, the trial court apparently neither realized nor was informed by the Lawrences' counsel that the case already had been dismissed with prejudice.

received from the Lawrences by the extended deadline and that any error regarding the motion for extension of time was harmless.[26] We agree.

**Reasons for Judgment**

The final part of our analysis is to consider the Lawrences' argument that the trial court erred in failing to provide oral or written reasons for its May 17, 2018 judgment, granting the defendants' summary judgment motions. In support of this argument, the Lawrences cite La. C.C.P. art. 966(C)(4), which requires oral or written reasons be provided when a summary judgment motion is granted.[27]

Although the trial court provided neither oral nor written reasons in rendering its May 17, 2018 judgment, the trial court detailed in the transcript of the April Hearing its reasons for granting the defendants' summary judgment motions—the Lawrences' failure to provide an expert medical testimony. Moreover, the Lawrences' counsel failed to make a request for written reasons for

---

[26] The physician defendants enumerate multiple other reasons why this argument is unpersuasive. First, they point out that it is doubtful the motion for extension for time was filed before the hearing on the summary judgment motions. Second, even assuming the motion for extension of time was filed before the hearing, it was filed the same day as the scheduled hearing. Third, the Lawrences' counsel failed to object at the April Hearing either to the scheduled May 17, 2018 hearing date or to the requirement that the Lawrences produce an expert report on or before that date. Fourth, the physician defendants note that a trial court is free to disregard a motion filed on the date of a scheduled hearing that is not in accord with the uniform or local rules. Fifth, the physician defendants note that when a motion is filed in close proximity to a scheduled hearing, counsel should walk the motion directly to the trial court's chambers or bring the motion to the hearing for consideration. Finally, the physician defendants contend that the motion for extension of time was filed with "either inaccurate or false pretenses; opposing counsel was not contacted, nor did they waive service on that Motion."

[27] La. C.C.P. art. 966(C)(4) provides:

> In all cases, the court shall state on the record or in writing the reasons for granting or denying the motion. If an appealable judgment is rendered, a party may request written reasons for judgment as provided in Article 1917.

La. C.C.P. art. 1917(A) provides:

> In all appealable contested cases, other than those tried by a jury, the court when requested to do so by a party shall give in writing its findings of fact and reasons for judgment, provided the request is made not later than ten days after the mailing of the notice of the signing of the judgment.

judgment, a prerequisite under the pertinent statutory provisions they cite. *See* La. C.C.P. art.1917; *see also Innocence Project New Orleans v. New Orleans Police Dep't,* 13-0921, p. 12 (La. App. 4 Cir. 11/6/13), 129 So.3d 668, 675 (rejecting a similar argument and reasoning that "written reasons for judgment are not required unless requested by party not later than ten days after the mailing of notice of judgment"). For these reasons, the Lawrences' argument that the trial court erred in failing to provide reasons for judgment is unpersuasive.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**