MADELEINE M. LANDRIEU, Judge.
| Jn this medical malpractice action, the plaintiffs, Angelo Albers, as natural tutor of John Patrick Albers, Angelo Albers, Jr. and Anthony Albers, (the Albers) appeal the district court’s granting of a motion for summary judgment in favor of the defendant, Kenneth Williams, M.D. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS IN THE TRIAL COURT
This case originates as a Petition for Wrongful Death for the death of Shannon Tufaro based on the alleged medical malpractice of various doctors and medical clinics. Ms. Tufaro’s children, the Albers, allege that the defendant here, Dr. Williams, was a physician at two pain clinics which Ms. Tufaro frequented to obtain prescription medication. The Albers contend that treatment by Dr. Williams and others led to their mother’s addiction to pain medication which ultimately caused her death. Ms. Tufaro died on April 6, 2005 from aspiration of gastric material secondary to multiple drug ingestion.
The Albers filed a claim with the Louisiana Patient’s Compensation Fund in June 2006 against Dr. Williams and others. No evidence was ever submitted to the medical review panel and that proceeding expired at the end of three years. This action for medical malpractice followed in July 2009. Dr. Williams filed an ^exception of prescription which the trial court denied on contra non valentón grounds occasioned by Hurricane Katrina and its devastating effects. At the hearing on the exception of prescription in July 2010, counsel for the Albers advised the court that all records from the clinics where Ms. Tufaro was allegedly treated were lost when the region flooded, and that the only medical records he had to prove his case were certain Medicaid prescription records. He acknowledged the difficulty this presented to his clients in carrying their burden of proof at trial. At that point in the proceedings, the Albers did not have an expert witness.
Dr. Williams propounded Interrogatories and Requests for Production of Docu- *942 merits to the Albers seeking the identity and opinion of any expert witness who would testify as to the standard of care and breach of that standard by Dr, Williams. The Albers never responded to the discovery requests. More than seven years after Ms. Tufaro’s death and seventeen months after the hearing on the exception of prescription, Dr. Williams filed a motion for summary judgment alleging that he was entitled to judgment as a matter of law, as the Albers still had not identified an expert witness. After a continuance requested by the Albers, the motion was ultimately set for hearing four months after being filed. The Albers failed to timely file an opposition to the motion. However, two days before the hearing, the Albers filed an opposition which included an affidavit by an expert, Dr. Charles McKay, a specialist in medical toxicology. This was the first notice Dr. Williams had of any expert who would testify on behalf of the Albers.
Despite the untimeliness of the opposition and disclosure of their expert, the trial court considered all of the pleadings filed, the attachments, and the arguments of counsel and granted the motion, finding that the Albers failed to present expert | testimony sufficient to support a breach of the applicable standard of care by Dr. Williams. The Albers timely filed this appeal.
ISSUE
Whether the trial court erred in granting Dr. Williams’ motion for summary judgment, finding that the expert’s opinion presented by the Albers was insufficient evidence to create a genuine issue of material fact.
DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Duncan v. U.S.A.A. Ins. Co., 2006-363, p. 3 (La.11/29/06), 950 So.2d 544, 547. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2). When a motion for summary judgment is made and properly supported, an adverse party may not rest on the mere allegations of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). If the plaintiff fails to produce factual support sufficient to establish that they will be able to satisfy their evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
To prevail in a medical malpractice action based on the negligence of a physician, a plaintiff must establish the standard of care applicable to the physician, a violation by the physician of that standard of care, and a causal connection between the physician’s alleged negligence and the plaintiffs injuries resulting therefrom. Pfiffner v. Correa, 94-0924, p. 8 (La.10/17/94), 643 So.2d 1228, 1233; La. R.S. 9:2794(A). Although the jurisprudence has recognized exceptions in instances of obvious negligence, these exceptions are limited to “instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician’s conduct as well as any expert can.” Williams v. Memorial Medical Center, 2003-1806, p. 16 (La.App. 4 Cir. 3/17/04), 870 So.2d 1044, 1054; Pfiffner, 94-0924 at p. 9, 643 So.2d at 1234; see also Coleman v. Deno, 2001-1517, p. 20 (La.1/25/02), 813 So.2d 303, 317. The jurisprudence has thus recognized that “an expert witness is generally necessary as a *943 matter of law to prove a medical malpractice claim.” Williams, 2003-1806 at p. 16, 870 So.2d at 1064; Williams v. Metro Home Health Care Agency, Inc., 2002-0534, p. 5 (La.App. 4 Cir. 5/8/02), 817 So.2d 1224, 1228.
In their petition, the Albers allege that Dr. Williams “failed to properly treat and/or monitor” Ms. Tufaro and was negligent in the manner in which he administered and prescribed narcotic medication to her. They further allege that Dr. Williams’ negligence caused or contributed to Ms. Tufaro’s death. These allegations are not such that a lay person could perceive negligence without the benefit of expert medical testimony.
At the summary judgment hearing, the Albers relied on the affidavit of Dr. McKay to establish the standard of care owed to Ms. Tufaro by Dr. Williams and his breach of the standard of care. Dr. McKay’s affidavit referenced the documents upon which he relied which were also attached to the Albers’ opposition. They are a Recipient Data Sheet from the Louisiana Department of Health and Hospitals, Bureau of Health Services Financing, Medicaid Management [ ..¡Information Services (“Data Sheet”) for “Shannon Smith;”[1] Ms. Tufaro’s death certificate; an Autopsy Protocol; an unverified letter from the Louisiana Department of Health and Hospitals providing Dr. Williams’ physician identification number and identifying Dr. Williams as a prescribing provider of “Shannon Smith;” and an affidavit from Angelo Albers, Jr. and Anthony Albers. The Albers contend that Dr. McKay’s affidavit coupled with the Data Sheet establishes that Ms. Tufaro filled multiple prescriptions for narcotic medication; that some of these prescriptions were filled under Dr. Williams’ physician identification number; and that Ms. Tufaro filled prescriptions or attempted to fill prescriptions allegedly written by Dr. Williams on four dates over a seven month period. They further contend that the Data Sheet appears to show that Dr. Williams’ physician identification number was associated with the following prescriptions: (1) on September 7, 2004, prescriptions filled for Cariso-prodol and Alprazolam; (2) on November 9, 2004, prescription filled for Oxycodone; (3) on February 8, 2005, an attempt to fill a prescription for Oxycodone; and (4) on April 5, 2005, prescriptions filled for Oxy-codone, Carisoprodol, and Alprazolam.
The Albers further allege that the Autopsy Protocol showed massive amounts of drugs in her body at the time of her death and that the death certificate shows that she died secondary to multiple drug ingestion. They contend that this information together with the Data Sheet and Dr. McKay’s affidavit is sufficient to provide proof of a violation of the standard of care by Dr. Williams.
This court disagrees. Pretermit-ting whether these unverified documents are competent summary judgment evidence, they, considered in conjunction with the ^affidavit of Dr. McKay, are insufficient to defeat summary judgment in this instance.[2]
Dr. McKay’s affidavit merely states conclusions regarding the medications prescribed to Ms. Tufaro. He bases his conclusions on his review of the Data Sheets, *944 Dr. Williams’ physician identification number and the Autopsy Protocol. He states that the medications are “powerful, addictive and subject to abuse.” He states that it is his professional opinion that “the pattern, manner, method and amounts of these medications that were prescribed ... constitutes a violation of the appropriate standard of care by those physicians (including but not limited to Dr. Kenneth Williams), who prescribed them.” This affidavit does not establish the standard of care, that Dr. Williams breached the standard of care, or that any treatment by Dr. Williams was a proximate cause of Ms. Tufaro’s death as required by Louisiana Revised Statute 9:2794(A). Dr. McKay’s affidavit fails to establish that Dr. Williams was the physician who actually prescribed the medications to Ms. Tufaro, that Dr. Williams was aware of “the pattern, manner, method and amounts” of medication being prescribed to Ms. Tufaro, or that the seven prescriptions allegedly written by him were enough to establish a breach in the standard of care owed to Ms. Tufaro. Further, Dr. McKay failed to opine that the seven prescriptions allegedly prescribed by Dr. McKay caused or contributed to the death of Ms. Tufaro.
Despite the fact that more than seven years has passed since Ms. Tufaro’s death, the Albers have failed to present competent evidence in support of their claims. Nowhere in Dr. McKay’s affidavit, in the affidavits of family members or |7in the record do the Albers provide proof that Dr. Williams actually treated Ms. Tufaro, that Dr. Williams actually prescribed the medication Ms. Tufaro filled and/or attempted to have filled under his physician identification number, that the prescriptions were actually filled, or that the medication allegedly prescribed by Dr. Williams caused Ms. Tufaro’s death. The trial court did not err in finding the plaintiffs’ evidence to be insufficient to defeat summary judgment.
The Albers contend that Dr. Williams has not presented expert testimony in support of his motion for summary judgment and therefore cannot prevail. This allegation is without merit. Louisiana Code of Civil Procedure article 966(C)(2) provides that if the mover does not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover is not required to negate all essential elements of the plaintiffs claim, but rather must point out to the court that there is an absence of factual support for one or more elements essential to the claim. The defendant health care provider does not bear the burden of proof at trial on the issue of whether he committed medical malpractice. Thus, he has no burden to present expert medical testimony in support of his motion for summary judgment. See, Samaba v. Rau, 2007-1726, p. 11 (La.2/26/08), 977 So.2d 880, 887.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment in favor of Dr. Williams and dismissing the Albers’ claims against him with prejudice.
AFFIRMED.
BELSOME, J., dissents with reasons.

. Shannon Smith was Ms. Tufaro's married name prior to her marriage to Anthony Alb-ers, Sr.

. "Merely stapling documents to a motion for summary judgment does not "magically” transform such documents into competent summary judgment evidence." Williams, 2003-1806 at pp. 14-15, 870 So.2d at 1053; Schully v. Hughes, 2000-2605, p. 5 (La.App. 4 Cir. 6/5/02), 820 So.2d 1219, 1222.