AMY, Judge.
[,The plaintiff alleges that he suffered damages as a result of an emergency department doctor’s failure to diagnose an infection and prescribe antibiotics upon his initial visit to the emergency room. The defendants filed a motion-for summary *902 judgment, contending that the plaintiff did not have appropriate expert medical testimony in support of his claim. The trial court granted the motion, and the plaintiff now appeals. For the following reasons, we affirm.
Factual and Procedural Background
According to the record, on October 7, 2010, the plaintiff, Jason Kinch, reported to the emergency department at Our Lady of Lourdes Regional Medical Center, Inc. Mr. Kinch complained of fever, chills, nausea, vomiting, and weakness. Mr. Kinch also alleges that he was experiencing pain in his lower right leg, which started after he was bitten or scratched while in the woods the previous evening. He was treated by Dr. Kenneth Godeaux, who reviewed Mr. Kinch’s lab work and examined his leg. According to Mr. Kinch, Dr. Go-deaux squeezed Mr. Kinch’s leg and told him that he had a pulled muscle. Dr. Godeaux prescribed a painkiller, an anti-nausea medication, and an anti-allergy medication and discharged Mr. Kinch with instructions to follow up with a primary care provider as needed and return to the emergency department if he became worse in any way.
On October 10, 2010, Mr. Kinch returned to the emergency department. His medical records from that visit indicate that he had developed significant erythe-ma, pain, and swelling in his lower right extremity. Notes from Mr. Kinch’s medical records indicate that his lower right calf area was very swollen — approximately three times the size of his other lower extremity. Mr. Kinch was admitted to the hospital and ultimately diagnosed with cel-lulitis of the lower right extremity, 12compartment syndrome, and fasciitis. The treatment for these conditions necessitated an eleven-day hospital stay and multiple surgeries, including skin grafts.
Mr. Kinch contends that it was “highly likely” that his symptoms present at his October 7 emergency department visit were manifestations of the cellulitis, compartment syndrome, and fasciitis diagnosed three days later. Mr. Kinch alleges that Dr. Godeaux failed to properly diagnose and treat his “obvious” infection during that first visit. According to the record, Mr. Kinch sought review of his claims by a medical review panel. However, the medical review panel expired before it issued an opinion. Thereafter, Mr. Kinch filed suit against Dr. Godeaux (through Kenneth B. Godeaux, M.D., LLC) and Our Lady of Lourdes. The defendants filed a motion for summary judgment on the basis that Mr. Kinch did not have sufficient expert medical testimony to establish that the defendants breached the standard of care and caused injury to Mr. Kinch. The record indicates that, at the time the defendants filed the motion for summary judgment, Mr. Kinch did not have any expert testimony.
However, Mr. Kinch retained an expert, Dr. Shannon Stinson, before the hearing on the motion for summary judgment. Mr. Kinch initially submitted an unsigned letter report from Dr. Stinson, to which the defendants filed an objection on the basis that it did not constitute competent evidence. At the hearing, Mr. Kinch offered Dr. Stinson’s affidavit which purported to verify the unsigned letter report.[1] Although Mr. Kinch did not offer a curriculum vitae for Dr. Stinson, her |saffidavit indicated that she is dual Board-certified in emergency medicine and clinical infor *903 matics. Dr. Stinson also opined that the care, or lack thereof, rendered to Mr. Kinch represented a breach of the standard of care required of an emergency room physician. In her attached letter report, Dr. Stinson also indicated that the breach “certainly did cause increased morbidity, although the extent of which it contributed to this is indeterminate.”
The defendants objected to both Dr. Stinson’s letter report and late-filed affidavit. The trial court admitted both into evidence, but found, however, that they were not “sufficient to establish the proof needed.” Accordingly, the .trial court granted the motion for summary judgment and dismissed Mr. Kinch’s claims with prejudice.
Mr. Kinch appeals, asserting as error that:
1. The trial court erred in its application of the shifting summary judgment standard detailed in La.C.C.P. art 966.
2. The trial court erred in finding that there was no genuine issue of material fact generated by Dr. Stinson’s report.
Discussion

Summary Judgment

The motion for summary judgment procedure is favored in our law and is designed to secure the just, speedy, and inexpensive determination of actions. La.Code Civ.P. art. 966(A)(2). The grant or denial of a motion for summary judgment is reviewed de novo. Schultz v. Guoth, 10-343 (La.1/19/11), 57 So.3d 1002. The appellate court uses the same criteria as the trial court when determining whether summary judgment is appropriate, i.e., there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of [4law, the motion shall be granted. Id.; La.Code Civ.P. art. 966(C)(1). Further, although the burden of proof remains with the movant,
if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary, judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the-adverse.party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La.Code Civ.P. art. 966(C)(2).
Thus, although the, moving party initially bears the burden of submitting evidence at the hearing, he may meet that burden by pointing out the lack of factual support for an essential, element of his opponent’s case. Schultz, 57 So.3d 1002. Thereafter, the party bearing the burden of proof at trial (usually the plaintiff) must produce sufficient evidence to demonstrate that he will be able to meet his burden of proof at trial. Id. Should he fail to do so, La.Code Civ.P. art. 966(C)(2) mandates the granting of the motion for summary judgment. Id.
In a medical malpractice action, the plaintiff must prove, by a preponderance of the evidence: 1) the standard of care applicable to the defendant(s); 2) that the defendant(s) breached that standard of care; and 3) that there is a causal connection between the breach and the resulting injury. Schultz, 57 So.3d 1002; La.R.S. 9:2794. When causation is at issue, the medical malpractice plaintiff need not prove that the defendant’s conduct was the only cause of his harm, but must show *904 that, as a result of the defendant’s negligence, it is more probable than not that he suffered injuries because of the defendant’s conduct. Bianchi v. Kufoy, 10-607 (La.App. 3 Cir. 12/8/10), 53 So.3d 530.
 Generally, expert testimony is required’ to establish the applicable standard of care and whether that standard was breached. Rogers v. Hilltop Ret. & Rehab. Ctr., 13-867 (La.App. 3 Cir. 2/12/14), 153 So.3d 1053. However, in cases where the negligence is so obvious that a lay person can infer negligence, e.g., where a "physician amputates the wrong arm or leaves a sponge inside a patient’s body, expert testimony is not required. Pfiffner v. Correa, 94-924, 94-963, 94-992 (La.10/17/94), 643 So.2d 1228.
Here, the defendants pointed out that Mr. Kinch had no expert testimony to support his* claims and provided’ Mr. Kinch’s discovery responses to that effect. Having reviewed the record, we conclude that thé facts of this case are such that the alleged negligent acts are not’so obvious that causation can be inferred, and that expert testimony is required to establish the standard of care, breach, and causation. Accordingly, we find that the defendants successfully pointed out a lack of factual support 'for the elements of Mr. Kinch’s medical malpractice claim.
Thus, we find no error in. the trial court’s application of the burden of proof as described in La.Code Civ.P. art. 966(C)(2). Accordingly, in order to survive the defendants’ motion for summary judgment, Mr. Kinch is required to “produce factual support sufficient to establish that he will Be able to satisfy his evidentiary burden of proof at trial.” Id. The record indicates that, after the - defendants filed their motion for summary judgment, Mr. Kinch retained Dr,'Stinson and submitted her affidavit and expert report into evidence.[2]
| fiDr. Stinson’s affidavit indicated that she is dual Board-certified in emergency medicine arid clinical informatics and that the letter report was her' opinion in Mr. Kifteh’s case. Dr.’ Stinson opined therein that “the care, or lack of care, rendered to Mr. Jason Kinch represents a breach of the standard of care required of an Emergency Medicine physician.” The letter report, which was attached to Mr. Kinch’s opposition to the defendant’s motion for summary judgment, indicated that Dr. Stinson reviewed Mr. Kinch’s medical records. Dr. Stinson noted that at his initial emergency department visit on. October 7, Mr. Kinch reported complaints of “chills, fever, n/v [nausea and vomiting], generalized weakness, [and] also injured right leg last night at work.” Dr. Stinson also stated:
While in the Emergency Department on 10/7/2010, Mr. Kinch’s complaints of fevers, chills, and right leg pain were undocumented by Dr. Godeaux in either the HPI or ROS sections (although were pulled” in as “additional information” from the triage record), and, other than the abnormal vital signs from triage, “slight dry oral mucosa”, and taehycar-dia, a normal physical exam was also documented.’ Of note-, the ROS section was documented" as “all other systems reviewed and otherwise negative”, thereby leaving out "any mention of fevers, *905 chills, or leg pata. 1 mg Dilaudid, ,a strong pain medication, .was ordered,' but it is unclear if this was for the abdominal cramping mentioned in the HPI (although no abdominal pain on exam) or for leg pain that was documented only in the triage record,
Mr.' Kinch had several objective signs of infection, including tachycardia (heart rate of 117), fever (temperature 100.4F), tachypnea (respiratory rate 24), and leu-kocytosis (WBC 14.2). In many cases, antibiotics would be given either in the Emergency Department or upon discharge for these signs despite no clear, documented reason for their cause. Upon discharge, patient was given instructions for nausea and vomiting as' well as a prescription for Phenergan (for nausea) and Zyrtec (normally for allergies, but it is unclear why it was prescribed in this setting),’ but there was again ho mention or treatment of the leg pain, fever, or leukocytosis and their cause.
Dr. Stinson concluded in her letter report that:
An emergency medicine physician’has" a duty to medically screen and treat (as necessary) a patient’s complaints. It is highly likely that the presenting' signs and symptoms on 10/7/2010 were early ^manifestations of the’ cellulitis, compartment syndrome, and abscess that were subsequently treated and operated on during the admission from 10/10/2010 through 10/21/2010. It is more likely than not that a three-day delay in treatment will increase morbidity. The failure of the emergency room physician to treat the patient’s infection with antibiotics was a breach of the standard ,of care for a reasonable emergency room physician. The breach certainly did cause increased morbidity, although the extent of which it contributed to this is ■indeterminate.
Having reviewed this evidence, we must conclude that it is insufficient to produce factual support sufficient to establish that Mr. Kinch will be' able to satisfy his evi-dentiary- burden of proof at trial. Dr. Stinson’s affidavit is conclusory in that it merely states that Dr. Godeaux breached the standard of care and fails to specifically address causation. See Tillman v. Eldridge, 44,460, p. 15- (La.App. 2 Cir. 7/15/09), 17 So.3d 69, 79 (“[An] affidavit that is merely conclusory is insufficient to serve as- evidence; affidavits that are devoid of specific underlying facts to support a conclusion of ultimate ‘fact’ are not considered legally sufficient to defeat summary judgment.”).
In her letter report, Dr. Stinson notes' that Dr. Godeaux failed to document any examination of Mr. Kinch’s leg. However, we observe' that Mr. Kinch’s deposition testimony, which was part of the evidence submitted in support of the motion for summary judgment, indicates that Dr. Go-deaux did examine Mr. Kinch’s leg. Further, Dr. Stinson does not associate any failure to document with-any damages to Mr. Kinch. 1 ■
Furthér, we find’ that Dr. Stinson’s report is speculative such that it is insufficient to satisfy Mr. Kinch’s burden of proof. See Foster v. Patwardhan, 48,575, 48,712 (La.App. 2 Cir. 1/22/14), 132 So.3d 495, writ denied, 14-614 (La.4/25/14), 138 So.3d 1233. Mere speculation will not defeat a motion for summary judgment, and conclusory allegations, improbable inferences, and unsupported | «speculation are insufficient to support a finding that a genuine issue of material fact exists. Scott v. City of Shreveport, 49,944 (La.App. 2 Cir. 6/24/15), 169 So.3d 770. Dr. Stinson concludes in her letter report that it was a breach of the standard of care for an *906 emergency room physician to fail to treat the patient’s infection with antibiotics. However, she previously stated that it would be appropriate to prescribe antibiotics “in many cases ” (emphasis added) and does not address whether those cases in which antibiotics would not be prescribed apply to the facts of this case. Finally, Dr. Stinson asserts that Dr. Godeaux’s failure to prescribe antibiotics “certainly did cause increased morbidity, although the extent of which it contributed to this is indeterminate.” We observe that Dr. Stinson offers no objective basis for this opinion, especially given her earlier qualification of the emergency department’s duty to prescribe antibiotics, and she is unable to determine how much that failure caused-an increase in Mr. Kinch’s damages. Given these ambiguities, we find that Dr. Stinson’s expert report is insufficient to defeat summary judgment.
Accordingly, we find no' merit to Mr. Kinch’s assignments of error.
DECREE
For the foregoing reasons, we affirm the judgment of the trial court granting the motion for summary judgment filed by the defendants, Our Lady of Lourdes Regional Medical Center, Inc., and Kenneth B. Go-deaux, M.D., LLC. All costs of this proceeding are assessed to the plaintiff, Jason Kinch.
AFFIRMED.
COOKS, J., dissents and assigns written reasons.

. The transcript of the hearing on the motion for summary judgment indicates that Mr. Kinch's attorney had a signed copy of Dr. Stinson’s letter report. However, our review of the record only reveals the unsigned copy attached to Mr. Kinch’s opposition to motion for summary judgment. See La.Code Civ.P. art. 966(F)(2).

. - Finding thát Dr. Stinson’s affidavit and expert report are insufficient to defeat summary - judgment in this instance, we dp not reach the question of whether her affidavit and the unsigned letter report contained in’the record ' constitute competent summary judgment evi-deuce. See, e.g., La.Code Civ.P. art. 967; Lejeune v. Louisiana-Med. Mut. Ins. Co., 13-845 (La.App. 3 Cir. 2/12/14), 153 So.3d 1021, writ denied, 14-519 (La.4/25/14), 138 So.3d 646; Albers v. Vina Family Med. Clinic, 12-1484 (La.App. 4 Cir. 5/22/13), 116 So.3d 940.