# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**20-65**

**MEGAN THOMAS INDIVIDUALLY AND AS NATURAL
TUTRIX OF HER MINOR CHILD, MARIAH CHARLES**

**VERSUS**

**GEETA DALAL, M.D., ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20186502
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Candyce G. Perret and
Jonathan W. Perry, Judges.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

**George Davis Ernest, III
Hurlburt, Privat & Monrose
Post Office Drawer 4407
Lafayette, LA   70502
(337) 237-0261
COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Megan Thomas**
    **Megan Thomas, Individually and as Natural Tutrix of her Minor Child,
    Mariah Charles**

**James R. Shelton**
**Durio, McGoffin, Stagg & Ackermann**
**Post Office Box 51308**
**Lafayette, LA   70505-1308**
**(337) 233-0300**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Geeta Dalal, M.D.**
    **Louisiana Medical Mutual Insurance Company**

**PERRET, Judge.**

Megan Thomas ("Appellant"), mother and duly appointed natural tutrix of Mariah Charles ("Mariah"), appeals the grant of summary judgment dismissing her medical malpractice action against Getta Dalal, M.D. ("Dr. Dalal") and Louisiana Medical Mutual Insurance Company (collectively referred to as "Appellees"). After a de novo review of the record, we reverse the grant of summary judgment.

## FACTUAL AND PROCEDURAL HISTORY:

Appellant initiated this lawsuit alleging that her daughter received negligent treatment from Dr. Dalal when she was an infant. Appellant first presented her claims to a medical review panel ("MRP"); however, the panel found that Dr. Dalal did not breach the standard of care. Thereafter, Appellant filed a Petition for Damages in the trial court and asserted the following factual account.

Mariah was born prematurely on October 8, 2014, at Lafayette General Medical Center ("LGMC"). Several days later, on October 13, 2014, an echocardiogram was performed and read by Dr. Dalal, which, according to Appellant's petition, "revealed a patent foramen ovale ("PFO") with a small left to right shunt and patent ductus arteriosus (PDA) with a large left to right shunt."[1]

Over the course of the next seven months, Dr. Dalal read approximately eleven additional echocardiograms that were performed on Mariah: seven at LGMC, three at Women's and Children's Hospital ("WCH"), and one while caring for Mariah on an outpatient basis. Dr. Dalal continued to note the PDA with a left to right shunt.

---

[1] Dr. Albert M. Gutierrez, Mariah's later treating physician, explains in his affidavit in the record that "[a] PDA is an abnormal connection or a 'hole' between the aorta and the pulmonary artery in the heart. It usually closes at birth or within a few days thereafter[.]"

On May 8, 2015, Mariah was admitted to the Pediatric Intensive Care Unit at WCH due to low oxygen saturation levels. Albert M. Gutierrez, M.D. ("Dr. Gutierrez") examined Mariah and ordered an echocardiogram. Dr. Gutierrez thereafter diagnosed Mariah with pulmonary artery hypertension. Mariah, who was in pulmonary hypertensive crisis, was immediately taken by helicopter to Children's Hospital of New Orleans. On May 13, 2015, Mariah underwent a heart catheterization procedure to close the PDA.

In her petition, Appellant asserts that Dr. Dalal should have detected Mariah's pulmonary artery hypertension and treated the conditions, but that, despite noting the PDA on the echocardiograms, Dr. Dalal failed to recommend treatment. Appellant avers that due to Dr. Dalal's prolonged failure to detect and treat Mariah's condition, Mariah suffered numerous serious and permanent injuries, as did Appellant.

Appellees answered the petition, admitting that Dr. Dalal treated Mariah at LGMC as a consultant to Mariah's neonatologist, acted as a consultant at WCH, and treated Mariah on an outpatient basis. Appellees admit in their answer that Dr. Dalal interpreted approximately twelve echocardiograms for Mariah. However, Dr. Dalal asserts that, while at LGMC, decisions regarding the abnormalities detected by the echocardiograms were made by the treating neonatologist.

Appellees filed a motion for summary judgment and attached the MRP Opinion which found no breach in the standard of care. Thus, because Appellant had not produced expert medical evidence to the contrary, Appellees asserted that they were entitled to summary judgment. Appellees also attached the Affidavit of Ryan Jones, M.D., panel member, attesting to the MRP Opinion.

In opposition, Appellant submitted the Petition for Damages, Answer to Petition for Damages, Affidavit of Megan Thomas, and an affidavit of Dr. Gutierrez. Dr. Gutierrez opined that Dr. Dalal did breach the standard of care for a pediatric cardiologist while treating, or not treating, Mariah's PDA and that failure caused her damage. Thus, Appellant argued summary judgment was not proper because the trial court would need to weigh the evidence or make a credibility determination between the MRP opinion and Dr. Gutierrez.

Appellees chose not to file an opposition or reply memorandum. However, at the hearing, Appellees argued that Dr. Gutierrez's affidavit was inadmissible because it failed to specifically identify what documents he reviewed in rendering his opinion. Appellees asserted that, without Dr. Gutierrez's affidavit, Appellant failed to create an issue of fact. Appellant argued that any complaint regarding the affidavit goes to the strength of Dr. Gutierrez's opinion and would require a credibility determination, inappropriate on summary judgment. According to the transcript and minutes, both memorandums and exhibits were offered and introduced into the record as evidence.

The trial court rendered judgment on September 3, 2019, granting summary judgment and dismissing all claims against Appellees. This appeal followed. On appeal, Appellant contends that the trial court erred in granting Appellees' Motion for Summary Judgment.

**ANALYSIS:**

A judgment granting summary judgment is reviewed de novo on appeal "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether a genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law." *Supreme Servs.*

*and Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638. Regarding the burden of proof, La.Code Civ.P. art. 966(D)(1) provides that "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment," the mover need only point to "the absence of factual support for one or more elements essential to the adverse party's claim[.]" If the moving party provides sufficient evidence to support the motion, the adverse party must then "produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id*. Thereafter, "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

Applicable, substantive law determines whether a fact is material on summary judgment; thus, we must examine the substantive law applicable to medical malpractice claims. *Baez v. Hosp. Serv. Dist. No. 3 of Allen Par.*, 16-951 (La.App. 3 Cir. 4/5/17), 216 So.3d 98. Louisiana Revised Statutes 9:2794(A) requires that a claimant in a medical malpractice claim prove "(1) the standard of care applicable to the defendant; (2) that the defendant breached that standard of care; and (3) that there was a causal connection between the breach and the resulting injury." *Samaha v. Rau*, 07-1726, p. 5 (La. 2/26/08), 977 So.2d 880, 883-84. In summarizing the standard of care element, this court has explained:

> [T]he standard of care of health care providers "shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill." [La.R.S. 40:1231.1(A)(22)] "Where the defendant physician practices in a particular specialty and the alleged acts of medical negligence raise issues peculiar to the

particular medical specialty involved, the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians within that specialty." *Domingue v. La. Guest House, LLC*, 17-633, p. 6 (La.App. 3 Cir. 12/6/17), 258 So.3d 3, 6, *writ denied*, 18-14 (La. 2/23/18), 237 So. 3d 517 (quoting *Vanner v. Lakewood Quarters Ret. Cmty.*, 12-1828, p. 6 (La.App. 1 Cir. 6/7/13), 120 So.3d 752, 755-56).

*White v. Rapides Healthcare Sys., LLC*, 19-101, pp. 8-9 (La.App. 3 Cir. 12/4/19) (unpublished opinion)(footnote omitted).

Additionally, to prove the elements of a medical malpractice claim, "[e]xpert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony." *Id* at 7 (quoting *Samaha*, 977-So.2d at 884). Expert testimony has also generally been required to prove causation "in cases involving patients with complicated medical histories or conditions[.]" *Id*. at p. 13; *See also Rogers v. Hilltop Ret. & Rehab. Ctr.*, 13-867 (La.App. 3 Cir. 2/12/14), 153 So.3d 1053; *Juge v. Springfield Wellness, L.L.C.*, 18-736 (La.App. 1 Cir. 2/28/19), 274 So.3d 1, *writ denied*, 19-513 (La.5/28/19), 273 So.3d 309. After reviewing the record, we find that the facts, negligent acts, and causation in this case are not "so obvious" as to infer negligence without the assistance of expert testimony and that Mariah's medical history is complicated enough to require expert testimony as to causation.

Appellees, movers on the motion for summary judgment, will not bear the burden of proving the medical malpractice elements at trial; thus, Appellees only needed to point to the absence of factual support for one or more of these elements. *See* La.Code Civ.P. art. 966(D)(1). To do so, Appellees attached the MRP Opinion and affidavit of a panel member, which concluded that there was no breach of the standard of care and no causation. Specifically, the panel opined:

[Dr. Dalal] did not deviate from the standard of care . . . for the following reasons: There is a wide range of therapeutic options and approaches to caring for premature infants with PDA's. Neither individual randomize controlled trials nor meda analysis of those trials have been able to demonstrate long term benefits of these treatments despite their efficacy in inducing ductal closure. The studies have not shown that closing PDA's have decreased the risk of developing chronic lung disease, bronco pulmonary dysplasia or pulmonary hypertension in extremely premature infants.

Thus, we find the burden shifted to Appellant to produce factual support sufficient to overcome summary judgment.

To overcome summary judgment, Appellant provided an opposing expert opinion via Dr. Gutierrez's affidavit. Dr. Gutierrez's affidavit indicated that he is licensed to practice medicine in Louisiana and is board certified in pediatric cardiology. Although the affidavit indicates Dr. Gutierrez's curriculum vitae was attached as Exhibit A, that exhibit does not appear in the appellate record. In forming his opinions, Dr. Gutierrez attested that he reviewed excerpts of various medical records from LGMC, Dr. Dalal, WCH, and Children's Hospital of New Orleans, as well as the echocardiograms and the reports interpreting the echocardiograms included in those records. Furthermore, he has personally treated and continues to treat Mariah. Dr. Gutierrez opined that Dr. Dalal did breach the standard of care for a pediatric cardiologist in treating Mariah's PDA and that failure caused her damage. Thus, Appellant argues summary judgment was not proper because the trial court would need to weigh the evidence or make a credibility determination between the MRP opinion and Dr. Gutierrez's opinion.

Appellees, however, maintain that Dr. Gutierrez's affidavit was inadmissible based on its failure to identify the factual basis for his opinions, and that the trial court properly evaluated whether the affidavit met evidentiary standards.

6

Concluding it did not, Appellees argue that the trial court properly disregarded the affidavit and granted summary judgment.

Affidavits submitted in support of or in opposition to summary judgment are governed by La.Code Civ.P. art. 967(A), providing:

> [A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

However, our jurisprudence has stated in the case of experts that "the inadequacy of an affidavit is a 'formal defect,' which is waived by the opponent unless he timely objects to the affidavit." *Thompson v. Ctr. for Pediatric and Adolescent Med., L.L.C.*, 17-1088, p. 6 (La.App. 1 Cir. 3/15/18), 244 So.3d 441, 446, *writ denied*, 18-583 (La. 6/1/18), 243 So.3d 1062. Pursuant to La.Code Civ.P. art. 966(D)(2), "if an expert's affidavit contains opinions that lack an adequate factual basis, are not sufficiently reliable, or are otherwise inadmissible under [La.Code Evid.] Article 702 and [La.Code Civ.P. art.] 967A, the opposing party must object to the affidavit." *Thompson*, 244 So.3d at 446. "[T]he reasoning or methodology underlying an expert's opinion are relevant only to determine whether the opinions are *admissible* under [La.Code Civ.P.] Articles 967A and [La.Code Evid.] Article 702." *Id*. at 447. If the opposing party fails to object, the trial court must consider the expert's opinions. *Id*. "At that point, in determining whether the evidence creates a genuine issue of material fact, the trial court cannot make credibility determinations, evaluate testimony, or otherwise weigh the evidence. The trial court must assume all affiants

7

are credible." *Bass v. Disa Glob. Sols., Inc.*, 19-1145, p. 10 (La.App. 1 Cir. 6/12/20), -- So.3d --.

As Appellant correctly notes, Appellees failed to properly object to Dr. Gutierrez's affidavit in a reply brief, as required by La.Code Civ.P. art. 966(D)(2). Thus, the affidavit must be accepted by the court. *See* La.Code Civ.P. art. 966(D)(2); *Mariakis v. North Oaks Health Sys.*, 18-165 (La.App. 1 Cir. 9/21/18), 258 So.3d 88.

However, a court may consider an affidavit to which no objection is made and yet conclude that the affidavit is insufficient to defeat summary judgment. *See Simon v. Allen Oaks, L.L.C*, 20-5 (La.App. 3 Cir. 6/10/20), 298 So.3d 881; *Kinch v. Our Lady of Lourdes Reg'l Med. Ctr.*, 15-603 (La.App. 3 Cir. 12/9/15), 181 So.3d 900. Under a de novo review, we consider whether Dr. Gutierrez's affidavit is sufficient to defeat summary judgment.

This court has previously stated that "[m]ere speculation will not defeat a motion for summary judgment, and conclusory allegations, improbable inferences, and unsupported speculation are insufficient to support a finding that a genuine issue of material fact exists." *Kinch*, 181 So.3d at 905. In *Kinch*, this court determined that the plaintiff's expert affidavit and report were insufficient to defeat summary judgment in a medical malpractice action brought against an emergency room physician. Mr. Kinch presented with several symptoms to the emergency room wherein he was prescribed medications, such as pain killers, but no antibiotics, and discharged. Mr. Kinch returned with worsened symptoms which necessitated an eleven-day hospital stay and several surgeries. Mr. Kinch filed a medical malpractice action alleging that the first emergency room physician failed to diagnose him and that the delay in proper treatment caused him injury. After the defendants filed a motion for summary judgment, Mr. Kinch retained an expert and

8

submitted an unsigned report in opposition, which was objected to as to form by the defendants. At the hearing, the trial court admitted the report after Mr. Kinch also submitted the expert's affidavit, attesting to the expert's certifications and that the report was her expert opinion.

The report stated that the expert reviewed Mr. Kinch's medical records and noted specific symptoms Mr. Kinch suffered that were undocumented, quoting parts of the records. The report stated, "An emergency medicine physician has a duty to medically screen and treat (as necessary) a patient's complaints." *Id*. at 905. The report then concluded that Mr. Kinch's presenting symptoms were "likely" early manifestations of the problems for which Mr. Kinch was later treated. The expert further opined that, more likely than not, the delay in treatment increased his morbidity. Finally, the report concluded, "The failure of the emergency room physician to treat the patient's infection with antibiotics was a breach in the standard of care . . . . The breach certainly did cause increased morbidity, although the extent of which it contributed to this is indeterminate." *Id*.

Though admitting both the report and affidavit, the trial court concluded Mr. Kinch did not submit sufficient evidence to carry his burden of proof and granted summary judgment to the defendants. On appeal, this court affirmed after determining that the expert's report and affidavit were conclusory and speculative, and, therefore, "insufficient to serve as evidence." *Id*. at 905 (quoting *Tillman v. Eldridge*, 44,460, p. 15 (La.App. 2 Cir. 7/15/09), 17 So.3d 69, 79). For instance, this court stated that the report offered "no objective basis" for the expert's opinion that the failure to prescribe antibiotics increased Mr. Kinch's morbidity. However, other factors also contributed to this court's finding that the report was insufficient to defeat summary judgment, such as ambiguities within the expert's report and,

9

importantly, its failure to address causation, an essential element to the plaintiff's claim.[2]

In *Simon*, 298 So.3d 881, this court, relying on *Kinch*, also concluded that an expert affidavit was insufficient to defeat summary judgment. In this nursing home malpractice action, the plaintiff submitted an expert affidavit in opposition to a motion for summary judgment. The affidavit attached the expert's Curriculum Vitae and attested that she was provided records related to the plaintiff. Without supplying any other facts or opinions, the expert then simply opined, "My preliminary opinion is that the facility staff failed to treat Mr. Simon within the proper standards of care and that this failure was the proximate cause of Mr. Simon's injuries[.]" *Id*. at p. 884. In a timely filed reply memorandum, the defendant objected to the affidavit as conclusory and failing to meet the requirements set forth in La.Code Civ.P. art. 967. Upon review, this court concluded that the affidavit was "speculative and conclusory, and it is devoid of any underlying and supporting facts regarding a standard of care that was allegedly breached, actions or inactions on the part of Allen Oaks that were in breach of any standard of care, or how any such breach caused any alleged injury to Mr. Simon." *Id*. at p. 887.

In contrast, the first circuit in *Thompson*, 244 So.3d 441, also a medical malpractice action, found that an admitted expert affidavit defeated summary judgment despite the defendant's claims that it was insufficient. Although the defendant objected to the admissibility of the expert's affidavit in a reply memorandum, including that it failed to satisfy the requirements found in La.Code

---

[2] The *Kinch* court stated, "Dr. Stinson's affidavit is conclusory in that it merely states that Dr. Godeaux breached the standard of care and fails to specifically address causation." *Kinch*, 181 So.3d at 905. Further, the court concluded, "Given these ambiguities, we find that Dr. Stinson's expert report is insufficient to defeat summary judgment." *Id*. at 906.

10

Civ.P. art. 967 and La.Code Evid. art. 702, he had no objection to the admissibility of the affidavit at the hearing, "except to the . . . sufficiency of the affidavit." *Id.* at 447. The trial court concluded that the challenge was to the merits of the summary judgment motion. Ultimately, the trial court found that the affidavit was sufficient to defeat summary judgment.

The *Thompson* court also distinguished *Kinch*: "*Kinch* and *Albers* [*v. Vina Family Medicine Clinic*, 12-1484 (La.App. 4 Cir. 5/22/13), 116 So.3d 940] are also factually distinguishable. Unlike Dr. Chabon's affidavit, the experts' affidavits in those cases **did not address an essential element of the plaintiff's burden of proof**." *Id.* at 448 (emphasis added). The first circuit further explained:

> While Dr. Chabon's affidavit does not specifically state the standard of care, he did attest that the medical care provided by the defendants to Jessica fell below the standard of care. Construing all reasonable inferences from this evidence in favor of the Thompsons, one can reasonably infer that Dr. Chabon is familiar with the applicable standard of care, and Gaudin breached that standard.
>
> If a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under *Daubert–Foret* and the other applicable evidentiary rules, and is sufficient to allow a reasonable juror to conclude that the expert's opinion on a material fact more likely than not is true, the trial court should deny the motion. *Independent Fire Insurance Company,* 755 So.2d at 236. Dr. Chabon's affidavit was admitted into evidence. Having reviewed that affidavit, we find it sufficient to allow a reasonable juror to conclude that Gaudin breached the applicable standard of care, and that Jessica sustained damages therefrom. The evidence thus creates a genuine issue of material fact precluding summary judgment.

*Id.* at 449 (footnote omitted).

The current case is also distinguishable from *Kinch* and *Simon*. In this case, Dr. Gutierrez's affidavit does not contain ambiguities or fail to address essential elements of Plaintiff's claim, as in *Kinch*. Furthermore, it is not completely devoid of specific underlying facts that support his opinion, as in *Simon*. Dr. Gutierrez's

11

affidavit was not objected to prior to the summary judgment hearing and was admitted into evidence. Dr. Gutierrez, relying on the excerpts of medical records provided to him and his personal knowledge of Mariah's medical issues, noted the following facts in his affidavit:

> 5. Dr. Dalal treated Mariah Charles for approximately 7 months following her premature birth. During that time she performed numerous transthoracic echocardiograms. An echocardiogram uses sound waves to produce images of the heart.

> 6. Dr. Dalal repeatedly reported a patent ductus arteriosus (PDA) in Mariah Charles' heart. A PDA is an abnormal connection or a "hole" between the aorta and the pulmonary artery in the heart. It usually closes at birth or within a few days thereafter but in Mariah Charles' case it did not close.

> . . . .

> 8. I was asked by the patient's mother to examine Mariah Charles. I did so on May 8, 2015. I measured the pulmonary artery pressure; immediately diagnosed pulmonary artery hypertension; and determined that Mariah Charles was in hypertensive crisis. She was immediately transferred to Children's Hospital of New Orleans via helicopter. Physicians at that hospital closed the PDA via cardiac catheterization.

Based on these facts and his review of Mariah's records, Dr. Gutierrez opined:

> 7. Dr. Dalal should have calculated the pressures in the heart and the vessels connected to it from the results of the echocardiograms. She failed to diagnosis [sic] pulmonary artery hypertension in Mariah Charles and failed to provide any treatment of the PDA other than take a wait and see approach.

> . . . .

> 9. In my opinion, Dr. Dalal's care and treatment of Mariah Charles was below the standard of care for pediatric cardiologists. The standard of care is that a premature baby should not be exposed to high pulmonary artery pressures for an extended period of time. It is also my opinion that Dr. Dalal's failure to properly treatment [sic] Mariah Charles' PDA more probably than not caused her damage including damage to her lungs and heart. It is also my opinion that Mariah Charles was more probably than not deprived of the chance of a better outcome.

Dr. Gutierrez states the applicable standard of care for pediatric cardiologists and concludes that Dr. Dalal breached that standard by failing to calculate Mariah's heart and vessel pressures, failing to diagnose pulmonary artery hypertension, and failing to provide any treatment of her PDA, which Children's Hospital of New Orleans later closed via a cardiac catheterization. He then opines that these failures more probably than not caused her damages, including damage to her lungs and heart.

After a de novo review of the record, we find that Dr. Gutierrez's affidavit was "sufficient to allow a reasonable juror to conclude that [the defendant] breached the applicable standard of care, and that [the plaintiff] sustained damages therefrom." *Thompson*, 244 So.3d at 449. Thus, summary judgment was not proper.

**DECREE:**

The September 3, 2019 Judgment granting summary judgment is reversed. All costs of this appeal are assigned to Appellees/Defendants, Geeta Dalal, M.D., and Louisiana Medical Mutual Insurance Company.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**