STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-562

ASHLEY SHORTRIDGE

VERSUS

WEST CALCASIEU CAMERON HOSPITAL

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2022-2516
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

LEDRICKA J. THIERRY
JUDGE

**********

Court composed of Shannon J. Gremillion, Jonathan W. Perry, and Ledricka J. Thierry, Judges.

AFFIRMED.

**Lee M. Schwalben, M.D., J.D.**
**616 Broad Street, Suite 307**
**Lake Charles, LA 70601**
**(337) 494-5757**
**COUNSEL FOR PLAINTIFF-APPELLANT**
**Ashley Shortridge**


**Benjamin J. Guilbeau, Jr.**
**Elizabeth F. Shea**
**Stockwell, Sievert, Vicellio, Clements & Shaddock, LLP**
**P. O. Drawer 2900**
**Lake Charles, LA 70602**
**(337) 436-9491**
**COUNSEL FOR DEFENDANT-APPELLEE:**
**West Calcasieu Cameron Hospital**

**THIERRY, Judge.**

Plaintiff, Ashley Shortridge, appeals the trial court's grant of Defendant, West Cameron Calcasieu Hospital's motion for summary judgment dismissing her medical malpractice claim. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On February 13, 2021, Plaintiff was taken by her son to the emergency room of West Cameron Calcasieu Hospital (hereafter WCCH), after passing out in a car. Plaintiff, who apparently had been in severe pain, had taken a Percocet tablet that contained Fentanyl she obtained from a friend. She did not respond to Narcan treatment, was subsequently intubated and placed on a ventilator for acute respiratory failure. Plaintiff was then admitted to the ICU and diagnosed with aspiration pneumonia and acidosis. She was found to be mildly tachycardic. Her lung exam revealed very diminished air movement. Plaintiff had an abdominal pannus extending to about halfway to her knees, with significant erythema in the bottom of the pannus with what appeared to be a Candidal infection. Wound care and pulmonology consults were obtained. Plaintiff was treated for possible bilateral aspiration pneumonia related to her decreased mental status. She eventually developed a decubitus ulcer on her sacrum that was debrided three times. She was kept in a medically induced coma until March 6, 2021, after which time, she responded well and remained stable.

Plaintiff responded well upon coming out of the medically induced coma and remained stable. On March 8, she was transferred out of ICU to a different floor, where she began physical therapy. Wound care continued throughout her hospitalization. On March 18, 2021, she was discharged from WCCH to Christus St. Patrick Hospital for acute inpatient rehabilitation.

This medical malpractice action was initiated by the filing of a Complaint with the Louisiana Patient's Compensation Fund (hereafter PCF) by Plaintiff on May 12, 2021. The Complaint requested a review of the medical care provided to Plaintiff by WCCH. It was alleged that WCCH staff breached the applicable standard of care by failing to turn or reposition Plaintiff while she was in the medically induced coma. This failure, it was alleged, caused her to develop a Stage 4 decubitus ulcer on her tailbone, which became septic, and required additional hospitalization. Plaintiff also alleged WCCH staff failed to maintain adequate nutrition, which she contended led to nerve damage in her left foot.

On February 16, 2022, the complaint went before a Medical Review Panel, which rendered a unanimous opinion stating: "It is the opinion of the Medical Review Panel that the defendant, West Cameron Calcasieu Hospital, did not deviate from the standard of care which is required of health care providers, their staff and/or employees of the same specialty."

Despite the Medical Review Panel holding, on June 16, 2022, Plaintiff filed a Petition for Damages in district court. In response, WCCH filed a Motion for Summary Judgment, asserting Plaintiff has not and will not be able to produce expert medical evidence to contradict that of the expert medical opinion of the Medical Review Panel in this matter (1) regarding the standard of care applicable to the hospital and/or its employees; (2) that WCCH and/or its employees breached the applicable standard of care, or (3) that any act or omission of WCCH and/or its employees caused or contributed to any injuries suffered by Plaintiff.

In her opposition to the motion for summary judgment, Plaintiff presented the expert affidavits of Dr. John Cascone and Patricia Semar, RN, who concluded that WCCH staff were grossly negligent and committed misconduct in their care of Plaintiff. WCCH responded with a Reply Memorandum, maintaining that the expert

2

affidavits submitted by Plaintiff lacked specific factual support for the conclusions therein and were insufficient evidence to demonstrate that Plaintiff could meet her heightened burden of proof at trial, as the alleged acts of malpractice occurred during the COVID-19 global pandemic and fell under the heightened burden of the Louisiana Health Emergency Powers Act (LHEPA). The trial court agreed and granted the motion for summary judgment.

Plaintiff appealed the trial court's grant of summary judgment, asserting the following assignments of error:

1. The trial court erred in allowing Defendants to argue that the heightened burden of proof found in La.R.S. 29:771(B)(2)(c)(i) was applicable without having pled it as an affirmative defense;

2. The trial court erred in finding the affidavits presented by Plaintiff's experts did not establish that Defendants behavior was reckless and deliberate;

3. The trial court erred in finding no genuine issue of material fact existed as regarding gross negligence on the part of Defendants;

4. The trial court erred in not allowing additional time for Plaintiffs to take the depositions of hospital staff who were employed at WCCH at the time of the incident.

## STANDARD OF REVIEW

The summary judgment procedure is expressly favored in the law and "is designed to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544. "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

The burden of proof on a motion for summary judgment rests with the mover, WCCH. La.Code Civ.P. art. 966(D)(1). In this matter, WCCH will not bear the burden of proof at trial; the burden of proof rests with Plaintiff. Thus, once WCCH properly supports its motion for summary judgment, then under La.Code Civ.P. art. 966(D)(1), it need only "point out to the court the absence of factual support for one or more elements essential" to Plaintiff's medical malpractice claim.

Thereafter, the burden shifts to Plaintiff "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that [WCCH is] not entitled to judgment as a matter of law." La.Code Civ.P. art. 966(D)(1). Plaintiff "may not rest on the mere allegations or denials of [her] pleading, but [her] response . . . must set forth specific facts showing that there is a genuine issue for trial. If [she] does not so respond, summary judgment, if appropriate, shall be rendered against [her]." La.Code Civ.P. art. 967(B).

**ANALYSIS**

In her first assignment of error, Plaintiff claims WCCH was prohibited from arguing the applicability of the Louisiana Health Emergency Powers Act (LHEPA).

On March 11, 2020, Governor John Bel Edwards declared a public health emergency for the State of Louisiana due to the COVID-19 global pandemic. In the declaration, the governor invoked the LHEPA. *Whitehead v. Christus Health Cent. La.*, 21-764 (La.App. 3 Cir. 6/8/22), 344 So.3d 91. Typically, the burden of proof that a plaintiff in a medical malpractice claim must establish by a preponderance of the evidence is as set forth in La.R.S. 9:2794(A) (i.e., the standard of care applicable to the defendant; that the defendant breached that standard of care; and there was a causal connection between the breach and the resulting injury). However, La.R.S. 29:771(B)(2)(c)(i) provides "During a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person

4

or damage to any property except in the event of gross negligence or willful misconduct." As this court noted in *Whitehead*, the "obvious purpose" of this modified burden of proof is the need "to allow health care providers to provide medical care and treatment during a time of public health crisis without concerns of liability for a patient's poor outcome, unless the treatment decisions were grossly negligent, or the provider's misconduct was willful." *Id.* at 95. Furthermore, as the more specific statute, La.R.S. 29:771 prevails over the more general malpractice statutes during a state of public health emergency and provides the heightened burden of proof. *Id.*

LHEPA is applicable in this case as the medical treatment at issue herein occurred from February 13, 2021 through March 18, 2021, which was within the time period that LHEPA was in effect.[1] Thus, LHEPA applied and Plaintiff bore the heightened burden of establishing through medical testimony that WCCH personnel were grossly negligent or guilty of willful misconduct in their treatment of Plaintiff. As WCCH notes, this was Plaintiff's burden of proof whether LHEPA was affirmatively pled or not.

In her second assignment of error, Plaintiff maintains the affidavits presented from Dr. Cascone and Nurse Semar set forth that Defendant's employees acted recklessly and deliberately in their care of Plaintiff which caused the complained of damages.

In his affidavit, Dr. Cascone discussed the care rendered to Plaintiff and rendered the general opinions that (1) the nursing staff "seemed reckless" in not applying pressure reduction measures; (2) the nursing staff "recklessly and

---

[1] On March 11, 2020, Governor Edwards, in Proclamation Number 25 JBE 2020, declared a public healthcare emergency existed in the State of Louisiana because of COVID-19 pursuant to the Louisiana Health Emergency Powers Act. The COVID public health emergency order was renewed multiple times. The public health emergency expired on March 16, 2022.

5

deliberately seem not to turn the patient;" and (3) the nursing staff was "reckless in their failure to maintain adequate nutrition."

In her affidavit, Nurse Semar set forth the chronology of the treatment Plaintiff received and referenced what she perceived as the nursing staff's "indifference" and "lack of diligence" to serving the patient's needs and that the nursing staff "demonstrated utter and complete disregard of ordinary prudence and intentional breach of duty" in providing for the needs of the patient.

Expert testimony is required to establish the standard of care of both the physician and hospital in a medical malpractice action, unless the negligence complained of is so obvious that a layperson can infer the negligence without the aid of expert testimony. *Pfiffner v. Correa*, 94-992 (La. 10/17/94), 643 So.2d 1228. Louisiana Code of Civil Procedure Article 967(B) requires that expert affidavits "must set forth specific facts showing that there is a genuine issue for trial." WCCH argues Plaintiff's expert affidavits are devoid of any specific underlying facts that support the general conclusions found in them, thus they are not sufficient to defeat its motion for summary judgment.

In *Kinch v. Our Lady of Lourdes Regional Medical Center*, 15-603 (La.App. 3 Cir. 12/9/15), 181 So.3d 900, this court concluded that an expert medical provider's conclusory affidavit submitted in a medical malpractice case was insufficient to defeat summary judgment. The plaintiff in *Kinch* alleged that the emergency department physician's failure to diagnose and treat an infection resulted in damages. The defendants moved for summary judgment arguing that the plaintiff did not have sufficient expert testimony to establish that defendants breached their standard of care and caused injury to the plaintiff. The plaintiff then retained an expert medical provider prior to the summary judgment hearing, and the expert submitted an affidavit and report opining that the lack of care rendered to plaintiff

6

was a breach of the standard of care and that the breach caused increased morbidity. This court concluded that the expert's affidavit was insufficient, stating as follows:

> [The expert's] affidavit is conclusory in that it merely states that [the defendant] breached the standard of care and fails to specifically address causation. See *Tillman v. Eldridge*, 44,460, p. 15 (La.App. 2 Cir. 7/15/09), 17 So.3d 69, 79 ("[An] affidavit that is merely conclusory is insufficient to serve as evidence; affidavits that are devoid of specific underlying facts to support a conclusion of ultimate 'fact' are not considered legally sufficient to defeat summary judgment.")

We agree with the trial court in the instant case that Plaintiff's expert affidavits were insufficient to defeat summary judgment. Under the heightened burden of proof, the affidavits are devoid of any facts that the conduct of the WCCH staff was grossly negligent or amounted to willful misconduct. We find this situation is similar to that in *Hebert v. Louisiana Medical Mut. Ins. Co.*, 22-316, pp. 14-15 (La.App. 3 Cir. 10/26/22), 353 So.3d 846, 853, wherein this court discussed the necessity of factual support for allegations of gross negligence/willful misconduct in a medical malpractice claim:

> Plaintiffs' petition does not allege specific facts to demonstrate that the defendant health care providers consciously desired the physical result of their acts or knew that the result was substantially certain to follow from their conduct. That deficiency of fact pleading, in turn, likewise distances Plaintiffs' claims from the definition of intentional tort provided by the supreme court in *Bazley* [*v. Tortorich*, 397 So.2d 475 (La.1981)].

The expert affidavits herein are speculative, conclusory and devoid of any underlying and supporting facts, and simply attempt to couch the actions or inactions of WCCH staff as grossly negligent, reckless and intentional. The trial court did not err in finding the expert affidavits failed to set forth specific facts showing there is a genuine issue for trial.

In her third assignment of error, Plaintiff asserts the trial court erred in finding no genuine issue of material fact existed regarding gross negligence on the part of Defendants. In order to show gross negligence or willful misconduct, a plaintiff

must show that the health care provider either "(1) consciously desires the physical result of his act[;] or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Whitehead*, 344 So.3d at 96 (*quoting Bazley*, 397 So.2d at 481). Moreover, in *Guillory v. City of Lake Charles*, 13-9, p. 3 (La.App. 3 Cir. 5/8/13), 157 So.3d 678, 680, we noted:

> The Louisiana Supreme Court has interpreted the intentional act exception narrowly. Substantial certainty "requires more than a reasonable probability that an injury will occur;" specifically, it means an injury is inevitable or incapable of failing. *Reeves v. Structural Pres. Sys.*, 98-1795, p. 9 (La.3/12/99), 731 So.2d 208, 213 (quoting *Jasmin v. HNV Central Riverfront Corp.*, 94-1497 (La.App. 4 Cir. 8/30/94), 642 So.2d 311, 312).

Plaintiff's allegations of "reckless" behavior and "utter and complete disregard of ordinary prudence and intentional breach of duty" simply do not rise to the level of gross negligence or willful misconduct. Plaintiff's petition and her expert affidavits contain no allegations against any of the medical staff that they actively desired or knew the results of their actions would result in harm. This assignment of error lacks merit.

In her last assignment of error, Plaintiff argues the trial court erred in not allowing additional time for Plaintiffs to take the depositions of hospital staff who were employed at WCCH at the time of the incident. We disagree.

The actions or inactions of the WCCH staff and the details of the patient's care can be determined from a review of the medical records. Plaintiff then has the burden of proving through expert medical testimony whether those actions or inactions were a breach of the applicable standard of care. The expert affidavits set out the chronology of Plaintiff's treatment and care, but fail to factually demonstrate how any actions or inactions of the WCCH staff were grossly negligent or amounted to willful misconduct. Thus, summary judgment was appropriate.

8

Plaintiffs also argue that a finding of gross negligence or willful misconduct is an issue of fact to be determined by the trier of fact. In support of this contention, Plaintiff cites *Sebble on Behalf of Estate of Brown v. St. Luke's #2, LLC*, 23-483 (La. 10/20/23) ___ So.3d ____ (2023 WL 6937352). *Sebble* held that when the medical treatment in question occurred during a declared state of public health emergency, the gross negligence standard of the La. R.S. 29:771(B)(2)(c)) should not be applied by a medical review panel. Thus, a medical review panel is not to decide the degree of a healthcare provider's breach of the standard of care, that is if it rose to the level of gross negligence, but that determination will be made by the trier of fact in the subsequent litigation. Herein, the trial court, after reviewing the expert affidavits provided by Plaintiff, found they contained no allegations which rose to the level of gross negligence and summary judgment was appropriate in this case. We find no error in that finding.

## DECREE

For the foregoing reasons, the judgment of the trial court granting West Calcasieu Cameron Hospital's motion for summary judgment is affirmed. All costs of this appeal are assessed against Plaintiff, Ashley Shortridge.

**AFFIRMED.**

9